UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

MARK WALKER,

      Plaintiff-Appellant,                              Case No. 21-1119

vs.

PARK COUNTY SHERIFF'S OFFICE,
DEPUTY LEIGH COCHRAN,
DUMB FRIENDS LEAGUE HARMONY EQUINE CENTER, and
BOBBI PRIESTLEY,

      Defendants-Appellees.

---

## APPENDIX II, pages 116-81

---

Appeal from an order of summary judgment by Chief Judge Phillip A.
Brimmer, United States District Court Judge for the
District of Colorado

Robert M. Liechty
ROBERT M LIECHTY PC
1800 Gaylord St.
Denver, Colorado 80206
Tel: (303) 861-5300
ATTORNEY FOR APPELLANT

Volume II

Response to Harmony Defendants' Motion to Dismiss ...................... 116
Response to County Defendants' Motion to Dismiss........................... 130
County Defendants' Reply Brief ......................................................... 142
Harmony Defendants' Reply Brief ...................................................... 153
Order from which appeal is taken ...................................................... 156
Judgment........................................................................................... 178
Notice of Appeal ............................................................................... 180

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 20-cv-00364-PAB-NYW

MARK WALKER,

      Plaintiff,

vs.

PARK COUNTY SHERIFF'S OFFICE, OFFICER LEIGH COCHRAN, DUMB FRIENDS LEAGUE HARMONY EQUINE CENTER, and BOBBI PRIESTLEY,

      Defendants.

---

### RESPONSE TO HARMONY DEFENDANTS' MOTION TO DISMISS

---

      Plaintiff Mark Walker, by his attorney Robert M. Liechty of ROBERT M LIECHTY PC, responds to the Harmony defendants' motion to dismiss pursuant to FRCP 12(b)(1)[1] and (6) [ECF #32] as follows:

      This is a case of the heart overtaking the mind and, as a result, it is a case of overreach.  Although defendants state that "[p]laintiff has not challenged the <u>execution</u> of the warrant," **see** motion, page 7 (emphasis in original), that is entirely incorrect. Plaintiff specifically alleges that even if there were a "reason to take the 12 horses, … [defendants] intentionally took more horses than was merited so that Mr. Walker could not bond out the animals under the above payment scheme and Harmony could keep them as part of its business model."  **See** amended complaint, ¶ 31.  Plaintiff alleged the following facts to support such overreach.

---

[1] Ms. Priestley claims there is a lack of jurisdiction regarding the state torts against her.

Over a period of 40 years, Mr. Walker bred horses resistant to colder winters. **See** amended complaint, ¶ 4. January, 2019, was a cruel weather month in Park County. *Id.*, ¶ 7. As a result, Mr. Walker put in twice the normal hours to care for his horses. *Id.*, ¶ 8. On January 29, Deputy Cochran posted a Notice of Warning that Mr. Walker was to provide food, water, and veterinary care for the horses. He did so. *Id.*, ¶ 12.

Ms. Priestley came to the ranch two weeks later, on February 14. *Id.*, ¶ 15. On that same day, Deputy Cochran gave Mr. Walker a second Notice of Warning and verbally told him that he had 30 days to improve the condition of the herd. He also was to have his veterinarian inspect a horse named Starburst. *Id.*, ¶ 16.

On February 15, Mr. Walker moved seven skinny horses to a pen near the ranch buildings and added four more horses upon Deputy Cochran's request.[2] *Id.*, ¶ 17. On that same day, Mr. Walker's veterinarian inspected Starburst, who told Mr. Walker to keep doing what he was doing. *Id.*, ¶ 18.

On February 16, upon the request of Deputy Cochran, Mr. Walker said he would buy alfalfa and start feeding all horses grass hay, as the County's veterinarian, Dr. Maybach, had recommended. *Id.*, ¶ 19. **See also** defendants' exhibit A, page 6, 3rd and 4th paragraphs.[3] On February 18, Deputy Cochran saw that "[a]ll horses were

---

[2] Ms. Priestley herself identified the seven horses. **See** the affidavit supporting the search warrant, defendants' exhibit A, page 5, 1st paragraph. There is no allegation that she asked him to move all 58 horses. That is, a week before the seizure, the facts say that only 7-11 horses needed help.

[3] Defendants submitted four exhibits, two warrants dated 2/20/19 for the Badger Basin Ranch and two warrants dated 2/21/19 for the Hartsel Spring Ranch. For purposes of the factual development, only exhibit A is necessary. Defendants did not discuss whether the motion should be converted to a

eating what appeared to be better grass hay and had water." *Id.*, 5th paragraph. That is, Mr. Walker was doing what Deputy Cochran had recommended, which makes it almost impossible to say that he was abusing the horses.

Ms. Priestley said it would be difficult for any healthy animal to survive in the harsh conditions during that stretch of winter. Amended complaint, ¶ 21. **See also** exhibit A, page 6, final paragraph. Both Ms. Priestley and Deputy Cochran should have known that the cold snap would break in the near future and that transporting the horses to the Harmony Center would have stressed them more than had the horses remained on the ranch. Amended complaint, ¶ 21. Indeed, two horses died of non-weather-related causes after they had been transported to the Harmony Center*. Id.*, ¶ 23. The weather, in fact, did improve two weeks later. *Id.*, ¶ 29.

Nonetheless, beginning on February 21, defendants seized 58 of Mr. Walker's 78 horses. *Id.*, ¶ 25. They probably seized so many horses because, given the weather, they felt sorry for them (even though his horses were bred for the cold weather); however, the fact that the weather was cold does not establish probable cause that Mr. Walker himself was abusing them. Furthermore, these numbers promoted the business of the Harmony Center because Harmony was in the business of providing horses for adoption. *Id.*, ¶ 26. The more horses defendants took, the better for the business model. Indeed, after Mr. Walker was found not guilty of abusing his horses, his criminal counsel asked for return of the six horses still in Harmony's possession; the others had

---

summary-judgment motion. **See** Practice Standards, §F(2)(a)(iii). Mr. Walker does not believe it should be converted.

all been adopted out.  *Id.*, ¶ 34.  Harmony did not return these six horses.  *Id.*  The fact

that Harmony did not retain the horses violated the court's order in the search warrant

where the judge directed defendants to "seize the goods and things found and *safely*

*keep them until further order of this Court…*"  **See** exhibit A, page 2 (emphasis added).

There is no allegation that the court ordered release of the horses; thus, the Harmony

business model violated the court's order.

Two weeks after the seizure, Veterinarian Page examined 12 of the horses at the

Harmony Center (Harmony was most concerned over these 12 horses).  **See** amended

complaint, ¶ 27.  All the horses were thin, but healthy, except for one young horse who

had an infection.[4]  *Id.*  They were in the same condition as when they had been seized

two weeks earlier.  *Id.*  It was her opinion "that the horses were thin solely because of

the cold and snowy weather and not because of any improper care.  In addition,

because taking the horses out of their home environment would cause them stress, it

would have been better to have left them at Badger Basin."  *Id.*, ¶ 28.

### *The §1983 Unconstitutional Seizures under the 4th and 14th Amendments*

The first claim alleges an unconstitutional seizure of the horses.  Deputy Cochran

drafted the affidavit supporting the search warrant; Mr. Walker alleges that Ms. Priestley

conspired with Deputy Cochran to seize the horses.  **See** amended complaint, ¶ 38.

This is based on Deputy Cochran's own words that when she was "asked why they

were seizing the horses … she said that it was out of her hands, indicating that the

---

[4] **See** amended complaint ¶ 23, the fifth horse was "a grulla weanling, 10 months old.  It died of infection after its seizure."

4

decision to seize the horses was Ms. Priestley's decision." *Id.*, ¶ 24.  Defendants seized the horses on February 21 (*id.*), only seven days after Ms. Cochran told Mr. Walker that he had 30 days to improve the condition of the herd, which supports the theory that it was Ms. Priestley who decided to seize the horses earlier.  *Id.*, ¶ 16.

Ms. Priestley's only defense to this claim is that she has qualified immunity premised on the assertion that she could reasonably believe there was probable cause that Mr. Walker had abused his horses.  **See** motion, page 5.  The dispositive question is whether Ms. Priestley violated clearly established law in asserting that she had a "reasonable suspicion" of criminal conduct.[5]

Even Ms. Priestley believed it would be difficult for any healthy animal to survive in the conditions.  **See** amended complaint, ¶ 40.  Thus, defendants took the horses because of the harsh conditions, not because of probable cause that Mr. Walker abused his horses, given that his horses were bred to withstand those conditions.  This violates the 4th Amendment.  Second, the overreach of the seizure, *i.e.*, the taking of more horses than necessary, violated the 14th Amendment by preventing Mr. Walker from bonding his horses due to the expense.

The instant warrant is an unusual warrant, contingent upon the condition of each horse: "All equines will be assessed by a Veterinarian for any and all compromising health conditions to include physical injuries.  Based on veterinary recommendations

---

[5] This is a legal construct because there is no indication that Ms. Priestley reads case law the way lawyers do.  Nonetheless, this construct has precedence and courts routinely judge an official's actions not by the official's good faith belief in the lawfulness of her actions but, rather, by what established law holds regarding those actions.  This is the only objective way of conducting the inquiry and, if the official does not know the law, that is no defense.

equines will be seized and impounded …" **See** exhibit A, page 1, last paragraph.  Thus, although a warrant will normally protect the searching officer (**see** motion, page 4), the protection provided by the instant warrant is a contingent protection.  Mr. Walker alleges that there is a genuine dispute as to which horses, if any, met the definition in the warrant, especially given the fact that Mr. Walker's horses were bred to withstand the cold.[6]  Furthermore, the crimes are against Mr. Walker's actions and how he criminally affected the horses.  That is, the probable cause had to show that Mr. Walker abused the horses, not that the temperature made life difficult for the horses.  The criminal jury in Park County found that he did not abuse his horses.  **See** amended complaint, ¶ 32.

Mr. Walker alleged that veterinarian Page believed that all the horses were healthy except for one young horse who had an infection, which infection could have been caused by its transport to the Harmony Center.  He alleged that his personal veterinarian, Dr. Harrison, told him to keep doing what he was doing, *i.e.*, he did not need to alter his care.  Even if Ms. Priestley could justify the taking of the seven skinny horses that she identified, or the 12 horses that Harmony had separated out at its center for Dr. Page's review, that still means 46-51 horses (or some other number of horses) should not have been taken.  Hence, the alleged overreach.

---

[6] A section of the animal-abuse statute reads as follows: "A person commits cruelty to animals if he … fails to provide [the animal] with … protection from the weather consistent with the species, breed, and type of animal involved."  CRS §18-9-202(1)(a).  However, it is not known if the search was based on this provision because the search warrant did not so specify.  There is no allegation in the complaint, nor in defendants' exhibits, that Mr. Walker failed to provide his horses protection from the weather, especially given the fact that his horses were bred for this type of weather.  Presumably, the horses in the "skinny pen" were protected.  **See** amended complaint, ¶¶ 17 & 18.

The determination of whether a horse owner is abusing his animals necessarily takes into account the physical circumstances outside the control of the owner.[7]  There is a *bona fide* dispute as to whether Mr. Walker could abuse his horses when he was spending twice as much time as normal tending to the horses, when Deputy Cochran gave him 30 days to improve the condition of the herd (*i.e.*, the herd was not in imminent danger), when he followed the advice of Deputy Cochran in bringing in his vet, when he followed the advice of Ms. Priestley in sheltering the seven skinny horses, when he followed the advice of his own veterinarian, when he followed the advice of the county's veterinarian in changing the feed, and when a third veterinarian (Dr. Page) believed there was no abuse of the horses.  Thus, even if the affidavit supporting the warrant was proper, there is still a dispute as to which, if any, horse had a "compromising health condition," premised upon abuse, to justify its seizure.

Ms. Priestley did not touch on the fourteenth-amendment violation, the violation based upon the fact that defendants seized extra horses knowing that Mr. Walker would have to surrender them because he could not make bond on them.  **See** amended complaint, ¶ 41.  The unconstitutionality of such a high bond amount was made clear by Judge Matsch in **Robbins v. City of Greeley**, 2016 WL 454999 (D. Colo. 2016).  In that case, Ms. Robbins had to pay $11,250 to bond out 15 dogs that had been taken from her.  Although the bond was pursuant to a city municipal code, the principal in **Robbins** is the same as that herein:

---

[7] The Harmony defendants cite to **Moore** for the proposition that an act-of-God defense is only available if an actor himself was not negligent.  **See** motion, pages 5-6.  Such a tort context is the wrong context. Defendants had to show probable cause that Mr. Walker had abused each of the 58 animals.

> That application of the relevant Greeley Municipal Code provisions was a violation of the procedural Due Process Clause of the Fourteenth Amendment.  It is so egregious an injustice as to shock the conscience of this Court and is thus also a violation of the Substantive Due Process Clause of the Fourteenth Amendment.

*Id.*, at *5.  **See also *Jenks v. Stump***, 93 P. 17 (Colo. 1907), in which Ms. Jenks, an officer of the Colorado Humane Society, took three of Mr. Stump's cows.  The court ruled that this was unconstitutional because

> [n]o provision is made for the payment of any residue over and above the charges of the agent and the expense of the sale to the owner, and such payment is not required by this law, and this is one of the tests of its constitutionality.  …  We think such powers are inhibited by the Constitution and must hold that the statute is in contravention … of the fourteenth amendment to the federal Constitution, that it authorizes the taking of property without due process of law, and is not a valid exercise of the police power of the state.

*Id.*, at 20.

The problem with enforcing the type of bonding arrangements in ***Robbins*** and in the instant case arises when the number of animals increases.  Bonding out one or two horses is manageable – but when defendants took 58 horses, it became unbearable.  Mr. Walker had no possibility of paying the required $15,450 every month to ensure return of his horses (even though the court directed Harmony to keep them until further order).  The abuse of this bonding statute was simply a cover used to steal the horses.  **See** amended complaint, ¶ 30.  That being the case, the unconstitutional taking is apparent even to a layperson.

Finally, Harmony itself is liable under §1983 because it was the beneficiary of the conspiracy to seize as many horses as possible in order to fulfill the business purposes of Harmony.  Thus, the theory against Harmony is not a theory of vicarious liability (**see**

motion, page 7); rather, the theory against Harmony is that the entire operation was done to satisfy its business model.  Absent this model, there was no motivation to steal the horses.

### Ms. Priestley is Liable for the §1983 Malicious Prosecution

Mr. Walker concurs that the §1983 malicious prosecution claim against Harmony may be dismissed.  There are five elements in the §1983 malicious prosecution claim against Ms. Priestley:

1. the defendant caused the plaintiff's prosecution,
2. the original action terminated in favor of the plaintiff,
3. no probable cause supported the original prosecution,
4. the defendant acted with malice, and
5. the plaintiff sustained damages.

See **Sanchez v. Hartley**, 810 F.3d 750, 754 (10th Cir. 2016).  Mr. Walker has alleged all these elements.

Ms. Priestley next argues that "there is no allegation that … Priestley pursued the prosecution of the criminal claims against Plaintiff…"  **See** motion, page 7.  However, if the officials "have been instrumental in the plaintiff's … prosecution, they cannot escape liability by pointing to the decisions of prosecutors…"  **Pierce v. Gilchrist**, 359 F.3d 1279, 1292 (10th Cir. 2004).  Ms. Priestley cannot avoid liability for a process she commenced.

### Ms. Priestley Claims Immunity against the State Torts

Mr. Walker agrees that Ms. Priestley would have immunity from the state torts unless her actions were willful and wanton.  Under the facts herein, willful and wanton conduct is conduct purposefully committed which exhibits a conscious disregard for the rights of others.  **See Martinez v. Estate of Bleck**, 379 P.3d 315, ¶¶ 31 and 32 (Colo.

2016).  There is no dispute as to whether Ms. Priestley's actions were purposely committed because she intended to have the horses seized and sent to Harmony. There is a genuine dispute as to whether she did this with disregard to Mr. Walker's rights.  However, Mr. Walker has alleged sufficient facts to base a claim that her actions were willful and wanton.[8]

### The Civil Theft Claim

Defendants dispute that Mr. Walker has pled that defendants knowingly obtained control over Mr. Walker's property without authorization and that defendants did so with the intent to permanently deprive him of his horses (the two elements of this claim in *Itin v. Ungar*, 17 P.3d 129,131 (Colo. 2000)).  **See** motion, page 9.  That is simply not true. Mr. Walker alleged that all the horses were taken to fulfill the business plan of Harmony, which is exactly what happened – they went to the Harmony Center and then were adopted out to other people.  The only issue is whether the horses were taken without authorization.  This, in turn, focuses on whether the warrant authorized the taking of the 58 horses.  Under the argument above, Mr. Walker has alleged facts to support a genuine dispute as to whether the warrant authorized the taking of "X" number of horses.

Defendants next argue that Mr. Walker needed to plead that their conduct amounted to criminal theft under *Itin*, 17 P.3d at 133.  **See** motion, page 9.  Mr. Walker did so.  Indeed, the theft herein is more pernicious because the theft allegedly misused

---

[8] Ms. Priestley has not requested a *Trinity* hearing to resolve this issue.  **See** *City and County of Denver v. Dennis*, 418 P.3d 489, ¶¶ 10 and 11 (Colo. App. 2018).  Mr. Walker submits that discovery is necessary before the Court may hold such a hearing.

the power of the law to commit the theft.  This is not the typical case of a criminal

seizure and forfeiture pursuant to law.  The "forfeiture" was done by a private party, the

Harmony Center – Mr. Walker alleged that the whole scheme was done to further its

business model.  Furthermore, the premature adopting out of the horses was in violation

of the court's order.  Mr. Walker also alleged that Ms. Priestley has done this before on

behalf of Harmony (the Gingrich matter) and that she even considered using the

scheme to seize Mr. Walker's cattle.  **See** amended complaint, ¶¶ 35 & 36.

Defendants also argue that because Mr. Walker voluntarily surrendered his

horses, this means he cannot allege the horses were taken "without authorization."  **See**

motion, page 10.  He did not voluntarily surrender his horses; rather, he was caught in

the same unconstitutional scheme as was the woman in ***Robbins***.  Succumbing to a

pernicious scheme is not a voluntary act.

As stated above, liability on this claim depends wholly on whether seizure of all

58 horses was authorized by the warrant or whether some or all of those seizures were

not authorized.

### *The Claim of Outrageous Conduct Is Valid*

Ms. Priestley relies upon ***Visor*** for the proposition that a plaintiff cannot have an

outrageous-conduct claim based upon the same facts as a federal claim.  **See** motion,

page 10.  Nineteen years later ***Visor*** was not followed in ***Christen-Loper v. Bret's***

***Electric, LLC***, 175 F. Supp. 3d 1213, 1224 (D. Colo. 2016), which noted that this

position was inconsistent with ***Grandchamp v. United Air Lines, Inc***., 854 F.2d 381

(10th Cir. 1988).  This court should follow ***Christen-Loper***.

11

Defendant also argues that there are no plausible facts to support his claim. **See** motion, page 11. But, as Judge Matsch stated above in ***Robbins***, the misuse of the bonding scheme "is so egregious an injustice as to shock the conscience of this Court." This fact alone establishes the viability of this claim.

### *The Defamation Claim Is Valid*

For this final claim, Mr. Walker alleged that Ms. Priestley caused to be published that Mr. Walker "was cruel to his horses." **See** amended complaint, ¶ 56. To a person such as Mr. Walker, who is in the outfitting business, to claim that he is cruel to the animals upon which he relies for his livelihood is damaging. Ms. Priestley knew that her statement was false for those reasons stated above: Ms. Priestley herself said it would be difficult for a healthy animal to survive the harsh conditions, Mr. Walker was spending twice as much time as normal tending to the horses, he followed the advice of Deputy Cochran, he followed the advice of Ms. Priestley, he followed the advice of his own veterinarian, he followed the advice of the county's veterinarian, and a third veterinarian (Dr. Page) believed there was no abuse of the horses. Mr. Walker was not cruel to his horses and Ms. Priestley knew her statement was false or she recklessly ignored this fact.

She also argues that "Plaintiff's claim fails because he does not allege that Priestley acted with malice." **See** motion, page 13. Indeed, Mr. Walker did not allege that Ms. Priestley acted with malice because that would be a conclusory allegation not subject to belief by this Court. Instead, Mr. Walker alleged the factual basis upon which the conclusion that Ms. Priestley acted with malice could be based.

WHEREFORE, plaintiff Mark Walker respectfully requests that this Court deny the Harmony defendants' motion to dismiss principally because he has alleged facts demonstrating that there is a genuine dispute as to whether there was probable cause that Mr. Walker abused all 58 horses.

Respectfully submitted this June 26, 2020.

By:     s/     *Robert M. Liechty*
        Robert M. Liechty
        ROBERT M LIECHTY PC
        1800 Gaylord St.
        Denver, Colorado 80206
        Tel: (303) 861-5300
        Fax: (303) 861-2746
        Email:  rliechty@crossliechty.com
        ATTORNEY FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this June 26, 2020, a true and correct copy of the above **RESPONSE TO HARMONY DEFENDANTS' MOTION TO DISMISS** was, unless otherwise indicated, filed electronically with the Court who provides notice to the following:

Cynthia Lowery-Graber
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, CO  80203-4541
cynthia.lowery-graber@bclplaw.com
Attorneys for Colorado Humane Society
and Bobbi Priestley

Andrew R. McLetchie
Eden R. Rolland
Matthew K. Sidran
FOWLER, SCHIMBERG, FLANAGAN & MCLETCHIE, P.C.
350 Indiana St., Suite 850
Golden, CO 80401
a_mcletchie@fsf-law.com
e_rolland@fsf-law.com
m_sidran@fsf-law.com
Attorneys for Park County Sheriff's Office
and Leigh Cochran

*Signed Original at Office of Robert M Liechty PC*

s/    *Robert Liechty*
Robert Liechty

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 20-cv-00364-PAB-NYW

MARK WALKER,

        Plaintiff,

vs.

PARK COUNTY SHERIFF'S OFFICE, OFFICER LEIGH COCHRAN, DUMB FRIENDS
LEAGUE HARMONY EQUINE CENTER, and BOBBI PRIESTLEY,

        Defendants.

---

**RESPONSE TO COUNTY DEFENDANTS' MOTION TO DISMISS**

---

Plaintiff Mark Walker, by his attorney Robert M. Liechty of ROBERT M LIECHTY PC,
responds to the County defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)
[ECF #33] as follows:

Upon reconsideration of the ***Monell*** claims against the Sheriff's office, Mr. Walker
agrees to dismiss those claims without prejudice.[1]

Over a period of 40 years, Mr. Walker bred horses resistant to colder winters.
**See** amended complaint, ¶ 4.  January, 2019, was a cruel weather month in Park
County.  ***Id.***, ¶ 7.  As a result, Mr. Walker put in twice the normal hours to care for his
horses.  ***Id.***, ¶ 8.  On January 29, Deputy Cochran posted a Notice of Warning that Mr.

---

[1] Discovery may reveal a custom or policy that Deputy Cochran was following in this case, in which event
Mr. Walker may move to reassert the claim.

Walker was to provide food, water, and veterinary care for the horses.  He did so.  *Id.*, ¶ 12.

Ms. Priestley came to the ranch two weeks later, on February 14.  *Id.*, ¶ 15.  On that same day, Deputy Cochran gave Mr. Walker a second Notice of Warning and verbally told him that he had 30 days to improve the condition of the herd.  He also was to have his veterinarian inspect a horse named Starburst, which happened the following day.  *Id.*, ¶¶ 16 and 18.

On February 15, Mr. Walker moved seven skinny horses to a pen near the ranch buildings and added four more horses upon Deputy Cochran's request.[2]  *Id.*, ¶ 17. When Mr. Walker's veterinarian inspected Starburst, she told him to keep doing what he was doing.  *Id.*, ¶ 18.

On February 16, upon the request of Deputy Cochran, Mr. Walker said he would buy alfalfa and start feeding all horses grass hay, as the County's veterinarian, Dr. Maybach, had recommended.  *Id.*, ¶ 19.  On February 18, Deputy Cochran saw that "[a]ll horses were eating what appeared to be better grass hay and had water."  **See** defendants' exhibit A, page 6, 5th paragraph.  That is, Mr. Walker was doing what Deputy Cochran had recommended, which makes it almost impossible to say that he was abusing the horses.

Ms. Priestley said it would be difficult for any healthy animal to survive in the harsh conditions during that stretch of winter.  Amended complaint, ¶ 21.  **See also**

_____

[2] Ms. Priestley herself identified the seven horses.  **See** the affidavit supporting the search warrant, Harmony defendants' exhibit A, page 5, 1st paragraph (re-attached hereto).  There is no allegation that she asked him to move all 58 horses.  That is, a week before the seizure, the facts say that only 7-11 horses needed help.  This calls into question whether there was probable cause to seize all 58 horses.

exhibit A, page 6, final paragraph.  Both Ms. Priestley and Deputy Cochran should have known that the cold snap would break in the near future and that transporting the horses to the Harmony Center would have stressed them more than had the horses remained on the ranch.  Amended complaint, ¶ 21.  Indeed, two horses died of non-weather-related causes after they had been transported to the Harmony Center*. Id.*, ¶ 23.  The weather, in fact, did improve two weeks later. *Id.*, ¶ 29.

Nonetheless, beginning on February 21, defendants seized 58 of Mr. Walker's 78 horses. *Id.*, ¶ 25.  On that day, defendants came to the Badger Basin Ranch with 11 trailers and 21 people to help in the seizures. **See** amended complaint, ¶ 24.  They seized 48 of the 58 horses on that day. *Id.*, and ¶ 25. It is reasonable to infer, based upon these preparations, that defendants had prejudged the condition of each horse even though, as stated below, each seizure would be contingent upon a veterinary assessment.

The warrant at issue is an unusual warrant, contingent upon the condition of each horse: "All equines will be assessed by a Veterinarian for any and all compromising health conditions to include physical injuries.  Based on veterinary recommendations equines will be seized and impounded …" **See** Harmony exhibit A, page 1, last paragraph.  There is no allegation concerning any veterinarian recommendation and this court cannot presume that the veterinarians made any type of recommendation.  Thus, although a warrant will normally protect the searching officer (**see**, *e.g.*, motion, page 5), the protection provided by the instant warrant is a

3

contingent protection.  That is, normally a warrant lists the items to be seized and, if the officer only seizes those items, he is protected.

The instant case is different because Mr. Walker alleges that there is a genuine dispute as to which horses, if any, met the definition in the warrant, especially given the fact that Mr. Walker's horses were bred to withstand the cold.  Furthermore, the crimes are against Mr. Walker's actions and how he criminally affected the horses.  That is, the probable cause had to show that Mr. Walker abused the horses,[3] not that the temperature made life difficult for the horses.

Two weeks after the seizure, Veterinarian Page examined 12 of the horses at the Harmony Center (Harmony was most concerned over these 12 horses).  **See** amended complaint, ¶ 27.  All the horses were thin, but healthy, except for one young horse who had an infection.[4]  *Id.*  They would have been in the same condition as when they had been seized two weeks earlier.  *Id.*  It was Dr. Page's opinion "that the horses were thin solely because of the cold and snowy weather and not because of any improper care. In addition, because taking the horses out of their home environment would cause them stress, it would have been better to have left them at Badger Basin."  *Id.*, ¶ 28.

In short, given all these facts, plaintiff has pled a genuine dispute as to which horse, if any, had been abused.

---

[3] The criminal jury in Park County found that he did not abuse his horses.  **See** amended complaint, ¶ 32.

[4] **See** amended complaint ¶ 23, the fifth horse was "a grulla weanling, 10 months old.  It died of infection after its seizure."

### *The §1983 Unconstitutional Seizures*

The first claim alleges unconstitutional seizures of the horses under two different theories.  The 4th amendment claim asserts that the 58 seizures were not based upon probable cause that any or all of the horses had been abused.  The 14th amendment claim asserts that defendants seized so many horses to ensure that Mr. Walker would lose them all because he could not afford to bond them out.  Mr. Walker addresses the 4th amendment claim first.

### *The 4th Amendment Violation*

The instant motion is a motion to dismiss and, therefore, this court must accept all well-pled facts as being true.  In this context, "'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and "that a recovery is very remote and unlikely."'"  *Sanchez v. Hartley*, 810 F.3d 750, 756 (10th Cir. 2016), *quoting Twombly*, 550 U.S. at 556.  Although Deputy Cochran claims that Mr. Walker has only pled conclusions, and not any facts, she has not addressed any of the facts outlined above.  This is fatal to her motion.

She argues that "[t]he core issue in this case is whether Defendants had probable cause to believe Plaintiff was guilty of animal cruelty."  **See** motion, page 2.  Mr. Walker agrees that this is close to the core issue and asserts that this principle was clearly established at the time of the incident.  The core issue is whether there was probable cause *vis-à-vis* a particular horse to seize that horse.  Therefore, if Mr. Walker can show that there was not probable cause to seize all 58 horses, he has stated a claim.

The instant case is controlled by the line of cases in which an officer seizes items not listed in the warrant. In this case, Mr. Walker alleges that defendants seized horses that did not have a "compromising health condition," *i.e.*, did not qualify for seizure under the warrant. **See**, *e.g.*, ***Bowling v. Rector***, 584 F.3d 956 (10th Cir. 2009).

> Where, as here, a warrant clearly and precisely specifies items to be seized, and the officers executing the warrant seize additional items, those officers act unreasonably for Fourth Amendment purposes …"

*Id.*, at 971. This was clearly established as of 2006. *Id.* That is, the horses to be seized, according to the warrant, had to be suffering from a "compromising health condition." Mr. Walker disputes which horses met this criteria, if any, and, therefore, horses that were seized which did not meet this criteria were seized outside the scope of the warrant.[5]

Deputy Cochran drafted the affidavit supporting the search warrant and Mr. Walker alleges that Ms. Priestley conspired with Deputy Cochran to seize the horses. **See** amended complaint, ¶ 38. This is based on Deputy Cochran's own words that when she was "asked why they were seizing the horses … she said that it was out of her hands, indicating that the decision to seize the horses was Ms. Priestley's decision." *Id.*, ¶ 24. However, without Ms. Cochran's participation in drafting the warrant, no seizure would have been possible.

Defendants seized the horses on February 21 (*id.*), only seven days after Deputy Cochran told Mr. Walker that he had 30 days to improve the condition of the herd. *Id.*, ¶

---

[5] Deputy Cochran misunderstood the nature of this claim, arguing that the claim had to do with the sufficiency of probable cause in the warrant. **See** motion, page 2, fn. 1; and page 5.

16. This supports the inference that there was no abuse as of that time and there was no need to take the horses so soon.

The following allegations support the inference that there was insufficient probable cause to take all or any of the 58 horses. Mr. Walker was spending twice as much time as normal tending to the horses. Deputy Cochran gave him 30 days to improve the condition of the herd (*i.e.*, the herd was not in imminent danger), but then she participated in the seizure only seven days later. Mr. Walker followed the advice of Deputy Cochran in consulting his own vet and he followed the advice of Ms. Priestley in sheltering the seven skinny horses. He followed the advice of the county's veterinarian who advised him to change the feed. A third veterinarian (Dr. Page) believed there was no abuse of the horses. Thus, even if the affidavit supporting the warrant was proper, there is still a dispute as to whether there was probable cause to seize all or any of the 58 horses because a horse had a "compromising health condition," as stated in the warrant.

Second, defendants obviously believed, before the seizure, that they would be taking most, if not all, of the horses at Badger Basin Ranch. They arrived with 11 trailers and 21 people to help execute the search. It is reasonable to infer, based upon these preparations, that defendants had prejudged the condition of each horse, no matter what the vets might say. Third, if weather was the problem, defendants knew it would break, which it did (**see** amended complaint, ¶ 29) and, furthermore, transporting the animals caused the animals stress (*id.*, ¶ 28), which, under defendant's criteria,

would of itself be animal abuse.  In short, there is a dispute regarding the probable

cause as to which horse, if any, Mr. Walker had abused.

However, because Deputy Cochran does not address any of these facts, Mr.

Walker has little to respond to except to repeat his allegations.

### The 14th Amendment Violation

Deputy Cochran did not touch on the fourteenth-amendment violation,[6] the

violation based upon the fact that defendants seized extra horses knowing that Mr.

Walker would have to surrender them because he could not make bond on them.[7]  **See**

amended complaint, ¶ 41.  The unconstitutionality of applying such a high bond amount

was made clear by Judge Matsch in ***Robbins v. City of Greeley***, 2016 WL 454999 (D.

Colo. 2016).  In that case, Ms. Robbins had to pay $11,250 to bond out 15 dogs that

had been taken from her.  Although the bond was pursuant to a city municipal code, the

principal in ***Robbins*** is the same as that herein:

> That application of the relevant Greeley Municipal Code provisions was a
> violation of the procedural Due Process Clause of the Fourteenth Amendment.  It
> is so egregious an injustice as to shock the conscience of this Court and is thus
> also a violation of the Substantive Due Process Clause of the Fourteenth
> Amendment.

*Id.*, at *5.  Mr. Walker acknowledges that the 14th amendment claim is primarily aimed at

the Harmony defendants because it was designed to fulfill Harmony's business model –

they reaped the benefits of the seizures.  However, Deputy Cochran conspired with Ms.

---

[6] She asserted that the 14th amendment claim was derivative of the 4th amendment claim and,
consequently, did not address the 14th amendment claim.  **See** motion, page 2, fn. 1.

[7] In the instant case, Mr. Walker alleged that he would have to pay $15,450 within 10 days and $15,450
every 30 days thereafter until the December trial (**see** amended complaint, ¶¶ 30 and 32), *i.e.*, a total of
$154,500 for the 10 months until trial.

Priestley to make this possible because, without the warrant she wrote, the Harmony

defendants could not have obtained the 58 horses.  As the Circuit noted in *Pierce v.*

*Gilchrist*, 359 F.3d 1279, 1292 (10th Cir. 2004),

> §1983, by its terms, applies not only to a person who "subjects," but also to any person who "causes to be subjected … any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 USC §1983 (emphasis added).  This suggests that Congress was concerned not just with the officer who formally initiates the process that leads to an unconstitutional seizure, but to all those who were the "cause" of deprivations of constitutional rights.

For pleading purposes, Mr. Walker has alleged that Deputy Cochran caused this

deprivation.

### Deputy Cochran is Liable for the §1983 Malicious Prosecution

There are five elements in the §1983 malicious prosecution claim[8] against Ms.

Priestley:

1.  the defendant caused the plaintiff's prosecution,
2.  the original action terminated in favor of the plaintiff,
3.  no probable cause supported the original prosecution,
4.  the defendant acted with malice, and
5.  the plaintiff sustained damages.

**See** *Sanchez*, 810 F.3d at 754.  Mr. Walker has alleged all these elements.

Deputy Cochran argues that because she did not give any false information to the

prosecuting DA, she cannot be liable for the prosecution.  **See** motion, page 7.  However,

if the officials "have been instrumental in the plaintiff's … prosecution, they cannot escape

liability by pointing to the decisions of prosecutors…"  *Pierce v. Gilchrist*, 359 F.3d 1279,

1292 (10th Cir. 2004).  Deputy Cochran cannot avoid liability for a process she

---

[8] The primary reason for filing this claim is that it allows recovery for damages caused by the criminal trial, *i.e.*, the criminal trial attorney's fees.

commenced and for which there was either no probable cause or substantially no probable cause to seize all the horses, a fact she knew and did not disclose.  Indeed, she wrote in her supporting affidavit that the horses were "not receiving adequate food, water and veterinary care that would ensure their ability to live in a normal fashion in accordance with their species, breed, age and sex.  [Ms. Priestley] stated due to the lack of water food and veterinary care the survival of these horses would be unlikely if left in the owner's care."  **See** Harmony exhibit A, page 6, last paragraph.  This was simply not true because Mr. Walker was following the advice of both veterinarians, of Ms. Priestley, and of Deputy Cochran.

Mr. Walker has pled enough facts to allow this claim to proceed.

### The Monell Claim against the Sheriff's Office

As stated above, Mr. Walker agrees to dismiss without prejudice the claim against the Sheriff's office addressed on pages 9-13 of the motion.

### The Affirmative Defense of Issue Preclusion Is Premature

On pages 13-15 of the motion, Deputy Cochran raises her affirmative defense that Mr. Walker cannot relitigate the issue of probable cause because the issue was decided against Mr. Walker in a prior motion to suppress.  However, the instant context is a motion to dismiss and a defendant may not base such a motion on defendant's affirmative defense.  "Dismissing a claim under Rule 12 on the basis of an affirmative defense is only proper where that defense is clear from the face of the complaint."  *Martinez v. City and County of Denver*, 2010 WL 1380529, *3 (D. Colo. 2010)(whether the claim was timely filed with the EEOC was not clear from the face of the complaint and, therefore, this

10

affirmative defense was not available on a motion to dismiss).  **See also *Branzan Alternative Investment Fund, LLLP v. Mellon Trust Co.**, 2015 WL 13730687, *8 (D. Colo. 2015)(an exculpatory clause, upon which defendant based a motion to dismiss, was not clear from the face of the complaint).

Likewise, in the instant case, there is no reference to the motion to suppress[9] in the complaint and, therefore, litigation of this issue will have to wait.

Respectfully submitted this June 30, 2020.

By:     s/      *Robert M. Liechty*
        Robert M. Liechty
        ROBERT M LIECHTY PC
        1800 Gaylord St.
        Denver, Colorado 80206
        Tel: (303) 861-5300
        Fax: (303) 861-2746
        Email:  rliechty@crossliechty.com
        ATTORNEY FOR PLAINTIFF

---

[9] A criminal defendant does not have to file a motion to suppress, so, unless it is mentioned in the complaint, there is no presumption that one exists.

## CERTIFICATE OF SERVICE

I hereby certify that on this June 30, 2020, a true and correct copy of the above **RESPONSE TO HARMONY DEFENDANTS' MOTION TO DISMISS** was, unless otherwise indicated, filed electronically with the Court who provides notice to the following:

Cynthia Lowery-Graber
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, CO  80203-4541
cynthia.lowery-graber@bclplaw.com
Attorneys for Colorado Humane Society
and Bobbi Priestley

Andrew R. McLetchie
Eden R. Rolland
Matthew K. Sidran
FOWLER, SCHIMBERG, FLANAGAN & MCLETCHIE, P.C.
350 Indiana St., Suite 850
Golden, CO 80401
a_mcletchie@fsf-law.com
e_rolland@fsf-law.com
m_sidran@fsf-law.com
Attorneys for Park County Sheriff's Office
and Leigh Cochran

*Signed Original at Office of Robert M Liechty PC*

s/   *Robert Liechty*
Robert Liechty

12

Apdx 141

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 20-CV-00364-PAB-NYW

MARK WALKER,

Plaintiff,

v.

PARK COUNTY SHERIFF'S OFFICE,
DEPUTY LEIGH COCHRAN,
DUMB FRIENDS LEAGUE HARMONY EQUINE CENTER, and
BOBBI PRIESTLEY

Defendants.

---

REPLY IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) [EFC NO. 33]

---

Defendants, Park County Sheriff's Office and Deputy Leigh Cochran ("Deputy Cochrane") (collectively "Defendants"), by and through their attorneys Fowler, Schimberg, Flanagan & McLetchie, P.C., hereby submit their Reply in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion") [ECF No. 33], and in support thereof, Defendants state as follows:

I.    INTRODUCTION

Plaintiff has doubled down on conclusory allegations, speculative inferences and conflicting positions to support the fallacy that being found not guilty in a criminal trial confers civil liability. The core issue in this case remains whether Defendants had probable cause to believe

Plaintiff was guilty of animal cruelty with respect to *each* horse that was seized. Plaintiff alleges that a portion of his horses were unconstitutionally seized as the by-product of an atypical search and seizure warrant. However, such allegations are fatal to Plaintiff's cause of action: To overcome qualified immunity, Plaintiff must demonstrate a "clearly established" constitutional right was violated. Since the warrant was an unusual warrant with seizure authorizations that were contingent on veterinary assessments, there must be a "clearly established" constitutional right that could have been violated by this warrant. However, there are no authorities that support such a position. Accordingly, Plaintiff fails to overcome qualified immunity.

To overcome the first prong of qualified immunity, i.e., that there was a constitutional violation, Plaintiff relies on conclusory allegations. In doing so, Plaintiff attempts to split hairs by conceding that there was probable cause for the subject warrants and that there was probable cause to seize horses pursuant to the warrants, but an unknown number of these horses were seized without probable cause. By failing to allege which of the horses fifty-eight horses should not have been seized, either through specific criteria or by some sort of identification system (i.e., by breed, name or identification number), Plaintiff fails to allege a constitutional violation above the speculative level.

Furthermore, Plaintiff's claims are barred by issue preclusion. In Federal Court, a complaint is subject to dismissal for failure to state a claim when the allegations indicate the existence of an affirmative defense that will bar the award of any remedy.

## II.     ARGUMENT

### A.  Plaintiff's Response Admits The Alleged Constitutional Right Was Not "Clearly Established" And Therefore, Deputy Cochran is Entitled to Qualified Immunity.

Qualified immunity protects Deputy Cochran "from liability for civil damages insofar as

[Deputy Cochran's] conduct does not violate <u>clearly established</u> statutory or constitutional rights of which a reasonable person would have known." *Brown v. The City of Colo. Springs*, 709 Fed. Appx. 906, 913 (10th Cir. 2017) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (emphasis added). To overcome Deputy's qualified immunity, Plaintiff must satisfy "a heavy two-part burden." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). First, Plaintiff must demonstrate that Deputy Cochran's individual actions violated Plaintiff's constitutional rights. *Id.* Second, Plaintiff must show that the constitutional right allegedly violated was "clearly established" when the warrant for seizure of Plaintiff's horses was executed. *Id.*

Plaintiff alleges, "The warrant at issue is an unusual warrant, contingent upon the condition of each horse…" Response, Page 3, ECF No. 41. Plaintiff cites no law to meet his burden to establish a constitutional right against seizure of emaciated horses based on a contingent warrant. The fact that the warrant was not a typical warrant tends to prove the opposite: there was no clearly established constitutional right because this was an unusual search and seizure. Accordingly, Plaintiff fails to satisfy the second prong of the *Albright* test and cannot overcome Deputy Cochran's qualified immunity, as a matter of law. Therefore, Plaintiff's claims against Deputy Cochran must be dismissed failure to state a claim.

### B. There Are No Allegations Of A Constitutional Violation On Behalf Of Deputy Cochran That Rise Above The Speculative Level.

Plaintiff cannot satisfy the first prong of qualified immunity, requiring Plaintiff to demonstrate that Deputy Cochran's individual actions violated his constitutional rights. *Albright* 51 F.3d at 1534. Here, Plaintiff cannot demonstrate (1) that Deputy Cochran's individual actions violated his constitutional rights or (2) that Deputy Cochran was involved in a conspiracy that violated his constitutional rights.

First, Plaintiff argues "without Ms. Cochran's participation in drafting the warrant, no seizure would have been possible." Am. Compl., ¶ 26, ECF No. 18. This argument fails to consider who wrote and who executed the warrant because Deputy Cochran's involvement was limited to drafting the affidavit in support of the warrants. This is consistent with the allegation that "Agent Priestly decided to execute the warrants" and how Deputy Cochran "said that it was out of her hands, indicating that the decision to seize the horses was Ms. Priestley's decision." Am. Compl., ¶¶ 24, 26, ECF No. 18. In between the drafting of the affidavit and execution of the warrants, the Park County Court granted the warrants. Therefore, Deputy Cochran is two-steps removed from the allegedly unconstitutional seizure of an unknown portion of the seized horses. Considering how there were other actors (Agent Priestly and the Court), Deputy Cochran's actions alone were insufficient to cause the seizure. Accordingly, the argument that the affidavit was instrumental in causing the horses to be seized is as persuasive as alleging any of the other events were the cause. Without direct involvement in the actions that caused Plaintiff's prosecution, seizure of the horses or bonding requirements for the horses, Plaintiff fails to state a claim against Deputy Cochran.

Second, Plaintiff attempts to overcome qualified immunity by alleging Deputy Cochran is associated with other events that purportedly support his claims. In doing so, Plaintiff makes conspiracy allegations based on statements made by Deputy Cochran and Agent Priestly. However, alleging these statements carry an underlying subtext with an ulterior meaning is speculative and cannot be given the presumption of truth for purposes of a motion to dismiss because, under *Ashcroft*, Plaintiff gets the benefit that the complaint's allegations are true, not that they were actually false. *See generally* Am. Compl., ECF No. 18. To now allege negative inferences to support a conspiracy is a concession that the Amended Complaint did not have these

allegations, therefore these arguments presented in the Response cannot be considered. *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019) ("Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint…"). Accordingly, without a conspiracy, there are no remaining arguments that could associate Deputy Cochran with another defendant's potential liability for his three claims.

Moreover, Plaintiff's "conspiracy" allegations fail to contain how the alleged coordination between Deputy Cochran and Agent Priestly rose to the level of an unconstitutional conspiracy, meaning there was an agreement between Deputy Cochran and Agent Priestly. *Mecca v. United States*, 389 F. App'x 775, 779-80 (10th Cir. 2010) (In Colorado, a claim of civil conspiracy requires a plaintiff to show: (1) an object to be accomplished; (2) an agreement by two or more persons on a course of action to accomplish that object; (3) in furtherance of that course of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and (4) damages to the plaintiff as a proximate result). In the Amended Complaint, the only allegation[1] concerning the conspiracy that is not a legal conclusion concerns the state of mind of Agent Priestly only and has nothing to do with Deputy Cochran's intent.[2] Am. Compl. ¶¶ 2, 22, 35, 38, ECF No. 18. Since the Amended

---

[1] "Agent Priestley and the Harmony Equine Center conspired with the County and Deputy Cochran to seize the horses. Brand Inspector Colby stated that Ms. Priestley asked him in March, 2019, how she could seize Mr. Walker's cattle. Mr. Colby told her that she could not seize the cattle." Am. Compl. ¶ 35, ECF No. 18.

[2] The allegations of a conspiracy in ¶ 2 and ¶ 38 are legal conclusions devoid of factual enhancement regarding the conspiracy. Am. Compl. ¶¶ 22, 38, ECF No. 18. There is one factual allegation in ¶ 22 that discusses an agreement between Deputy Cochran and Agent Priestly, however this agreement did not concern drafting the warrant or executing the warrant, but instead regarded the condition of the subject horses, not how to act regarding the observed conditions, which is what Plaintiff alleges was basis of the alleged conspiracy. Am. Compl. ¶ 22, ECF No. 18.

Complaint did not allege facts supporting the existence of an agreement between Deputy Cochran and Agent Priestly regarding how they would enforce their authority as law enforcement in a coordinated effort, the label of conspiracy is insufficient to associate Officer Cochran with Agent Priestly's decision. *Ashcroft*, 556 U.S. at 678 ("Mere labels…are not sufficient.").

> ### i. There Was No Conspiracy Involving Deputy Cochran With Respect To The Seizure Of Plaintiff's Horses.

Plaintiff attempts to allege that there was a conspiracy with intent to unconstitutionally seize his horses. However, the Amended Complaint contains no allegations that support the existence of an agreement to execute the warrant. To now allege Deputy Cochran's statement regarding how the situation was "out of her hands" really carries the meaning that there was a conspiracy and illegal cooperation, goes against the plain meaning of the words stated by Deputy Cochran nor does it satisfy all the elements of a conspiracy. *Mecca*, 389 F. App'x at 779-80. Since, under *Ashcroft*, Plaintiff gets the benefit that the allegations in the complaint are true, and not actually false, the statement must be taken at face value: Deputy Cochran had no say in the decision to execute the warrants. Therefore, this new allegation is insufficient to associate Deputy Cochran with any Fourth Amendment violation if the seizure is found to have been unconstitutional. Accordingly, Plaintiff fails to state a claim regarding the Fourth Amendment claim.

> ### ii. There Was No Conspiracy Involving Deputy Cochran With Respect To Plaintiff's Prosecution

Plaintiff attempts to allege that there was a conspiracy with the intent to maliciously prosecute. However, the Amended Complaint contains no allegations that support the existence of an agreement to prosecute. Since the Amended Complaint is given the presumption of *truth*, Deputy Cochran did not make the observation that the lack of water, food and veterinary care was

necessary for the horses' survival, she merely restated it. Exhibit A to ECF No. 41, Page 6, ¶ 6. Therefore, this statement is insufficient to establish that Deputy Cochran was involved in making this observation, which Plaintiff alleges is an event that was instrumental to the allegedly malicious prosecution. Under *Peirce v. Gilchrist*, Deputy Cochran cannot be liable for Plaintiff's prosecution because the observations were not made by Deputy Cochran and therefore, Deputy Cochran could not have been instrumental in Plaintiff's prosecution. 359 F.3d 1279, 1292 (10th Cir. 2004). Accordingly, Plaintiff fails to state a claim regarding the malicious prosecution claim.

### iii.   There Was No Conspiracy Involving Deputy Cochran With Respect To The Bonding Scheme.

Similarly concerning the Fourteenth Amendment claim, Plaintiff attempts to allege that there was a conspiracy with the intent to subject Plaintiff to an unconstitutional bonding scheme. First, there are no allegations that Deputy Cochran was even aware that Plaintiff would have been unable to afford the bonds for his horses or that she knew what the bond amount would be. Therefore, it is speculative that Deputy Cochran agreed to subject Plaintiff to a bonding scheme she had no knowledge of. In accord with this lack of knowledge, Plaintiff's Amended Complaint contains no allegations that support the existence of an agreement between Deputy Cochran and Agent Priestly to set bonding requirements that Plaintiff could not meet.

Second, the Response makes a conclusory allegation as to a bonding scheme conspiracy, stating "without the <u>warrant</u> [Deputy Cochran] wrote, the Harmony defendants could not have obtained the 58 horses." Response, Page 9, ECF No. 41. Whether Plaintiff's word choice was intentional, it evidences the issue: who wrote the warrant. Instead, the facts are the court wrote the warrant and set the parameters for search and seizure. Exhibit A to Response, ECF No. 41. Deputy Cochran merely wrote an affidavit. Am. Compl., ¶ 22. Accordingly, this allegation is insufficient

to establish Deputy Cochran had any intent to effectuate a bonding scheme that would deprive Plaintiff of his horses and consequently, Deputy Cochran cannot be associated with another party's liability concerning the bonding, if there is any. Accordingly, Plaintiff fails to state a claim regarding the Fourteenth Amendment claim.

### C.  Plaintiff's Claims Are Barred by Issue Preclusion.

A complaint in federal court is subject to dismissal for failure to state a claim when the allegations indicate the existence of an affirmative defense that will bar the award of any remedy. *Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019) (citing *Jones v. Bock*, 549 U.S. 199 (2007) ("An affirmative defense… may be raised in a motion to dismiss when the grounds for the defense appear on the face of the complaint.").

"When a complaint raises an arguable question of law, which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Fed. R. Civ. P. 12(b)(6) grounds is appropriate." *Neitzke v. Williams*, 490 U.S. 319, 320 (1989). Moreover, in resolving the question of law, the court may consider "[f]acts subject to judicial notice…without converting a motion to dismiss into a motion for summary judgment." *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004). Issue preclusion is a pure question of law. *Shire LLC v. Sandoz Inc.*, Civil Action No. 07-CV-00197-PAB-CBS, 2008 U.S. Dist. LEXIS 101446, at *5 (D. Colo. Dec. 5, 2008). Accordingly, this Court may resolve the pure question of law as to whether Plaintiff's claims are barred by issue preclusion based on the allegations in the complaint and facts subject to judicial notice from *People v. Walker*, Park County Court Case No. C0472019M000043. Therefore, under *Neitzke*, this Court may dismiss the claims.

Plaintiff seeks to dispose of the issue preclusion argument as premature. Response, Page

10, ECF No. 41. However, under the above cited-case law, this matter is distinguishable from the authorities offered by Plaintiff. Therefore, unlike in *Martinez v. City and County of Denver*, 2010 WL 1380529, *3 (D. Colo. 2010), which concerned a statute of limitations issue that was not clear from the complaint alone, the facts establishing issue preclusion are presently before the court and can be considered.

Issue preclusion prevents the re-litigation of issues "if: (1) the issue is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding." *Stanton v. Schultz*, 222 P.3d 303, 307 (Colo. 2010) (citing *Rantz v. Kaufman,* 109 P.3d 132, 139 (Colo. 2005)); *Wilkinson v. Pitkin Cty. Bd. of Cty. Comm'rs*, 142 F.3d 1319, 1322 (10th Cir. 1998) (holding the preclusive effect of a state-court decision in a 42 U.S.C.S. § 1983 action filed in federal court is a matter of state law). To satisfy these elements, there are no facts that would need to be considered that are outside of those alleged in the Amended Complaint or those of which judicial notice may be taken: Plaintiff alleges that he was a party to a previous criminal trial during which probable cause was considered as to *all* the horses and that he vigorously defended himself, which resulted in a final verdict of not guilty. *See generally* Am. Compl., ECF No. 18. Therefore, all the elements of issue preclusion have been alleged and consequently Plaintiff's argument "that there is a genuine dispute as to which horses, if any, met the definition in the warrant" fails because the Court had considered this issue in ruling on the Motion to Suppress. As a result, the affirmative defense of issue preclusion as to issues that have been previously tried is clearly indicated from

Apdx 150

the face of the Amended Complaint. Thus, Plaintiff is barred by issue preclusion from relitigating the probable cause issue. Accordingly, Plaintiff has failed to state a claim against Deputy Cochran and the claims against her should be dismissed.

## CONCLUSION

Plaintiff has failed to overcome his heavy burden to overcome qualified immunity and state a claim on which relief can be granted. The allegations in the Amended Complaint are insufficient to allege that Plaintiff's criminal prosecution resulted in a violation of his constitutional rights. Further, the allegations concerning constitutional violation do not address a clearly established constitutional right considering the warrant's contingencies. Thus, Plaintiff fails to plead facts to overcome qualified immunity. Any attempts to reframe the allegations of the complaint to draw inferences of dishonestly to cure the Amended Complaint's deficiencies cannot be considered because they were not alleged in the Amended Complaint. Therefore, Defendant Deputy Leigh Cochran and Defendant Park County Sheriff's Office respectfully request that the Court dismiss all of Plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted this 15th day of July, 2020.

*/s/ Andrew R. McLetchie*
Andrew R. McLetchie
Eden R. Rolland
Matthew K. Sidran
FOWLER, SCHIMBERG,
FLANAGAN & MCLETCHIE, P.C.
350 Indiana St., Suite 850
Golden, CO 80401
Telephone: 303-298-8603
Fax: 303-298-8748
a_mcletchie@fsf-law.com
e_rolland@fsf-law.com
m_sidran@fsf-law.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of July, 2020, I caused a true and correct copy of the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) [EFC NO. 33]** to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Robert M. Liechty
ROBERT M. LIECHTY PC
1800 Gaylord St.
Denver, CO 80206
303-861-5300
rliechty@crossliechty.com
*Attorneys for Plaintiffs*

Cynthia Lowery-Graber
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
cynthia.lowery-graber@bclplaw.com
*Attorneys for Colorado Humane Society*
*and Bobbi Priestley*

*/s/ Sylvia Osiecka*
Sylvia Osiecka

Apdx 152

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 20-cv-00364-PAB-NYW

MARK WALKER

Plaintiff,

v.

PARK COUNTY SHERIFF'S OFFICE; DEPUTY LEIGH COCHRAN; DUMB FRIENDS
LEAGUE HARMONY EQUINE CENTER; and BOBBY PRIESTLY

Defendants.

---

**JOINDER IN REPLY IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO F.R.C.P. 12(b)(1) AND (6)**

---

Defendants Dumb Friends League Harmony Equine Center ("Harmony") and Bobbi

Priestly ("Priestly")[1] (together, "Harmony Defendants") hereby respectfully join in the Reply in

Support of Motion to Dismiss filed by Defendants Park County Sheriff's Office and Deputy

Leigh Cochran as if the arguments were more fully set forth and pled herein by the Harmony

Defendants.  In addition, the Harmony Defendants also reiterate and restate their Motion to

Dismiss arguments in their entirety.

Respectfully submitted this 15th day of July, 2020.

s/Cynthia Lowery-Graber
Cynthia Lowery-Graber
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Telephone: (303) 861-7000
E-mail: Cynthia.lowery-graber@bclplaw.com
*Attorneys for DefendantsDumb Friends League*

---

[1] The Complaint erroneously spells Ms. Priestly's name, it is corrected here, Bobbi Priestly.

*Harmony Equine Center and Bobby Priestly*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 15, 2020, a true and correct copy of the foregoing **JOINDER IN REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1) AND (6)** was filed with the Court and served via CM/ECF:

Robert Liechty
Robert M. Liechty P.C.
1800 Gaylord Street
Denver, CO 80206
rliechty@crossliechty.com
*Counsel for Plaintiff*

Andrew R. McLetchie
Eden R. Rolland
Matthew K. Sidran
Fowler, Schimberg, Flanagan & McLetchie, P.C.
350 Indiana Street, Suite 850
Golden, CO 80401
*Counsel for Park County Sheriff's Office and Leigh Cochran*

*s/ Cynthia Lowery-Graber*
Cynthia Lowery-Graber, Esq.

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-00364-PAB-NYW

MARK WALKER,

   Plaintiff,

v.

PARK COUNTY SHERIFF'S OFFICE,
DEPUTY LEIGH COCHRAN,
DUMB FRIENDS LEAGUE HARMONY EQUINE CENTER, and
BOBBI PRIESTLEY,

   Defendants.

---

**ORDER**

---

This matter is before the Court on Dumb Friend League Harmony Equine Center and Bobbi Priestly's Motion to Dismiss [Docket No. 32] and Park County Sheriff's Office and Deputy Leigh Cochran's Motion to Dismiss [Docket No. 33].  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

**I. BACKGROUND**[1]

Plaintiff is a rancher who, prior to the events giving rise to this suit, had a total of 78 horses at three ranches in Hartsel, Colorado.  *See* Docket No. 18 at 2, ¶ 4.  Plaintiff has been breeding and raising horses for over 40 years.  *See id.*, ¶ 5.  In January, 2019, the winter in Hartsel was difficult; snowfall exceeded 30 inches and temperatures reached 40 degrees below zero for a two week period.  *See id.*, ¶ 7. The harshness of

---

[1] The Court assumes that the allegations in plaintiff's complaint are true in considering the motion to dismiss.  *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

winter required extra work for plaintiff.  In a normal winter, it would take plaintiff and his two ranch hands three hours to feed the herd, but, in January 2019, it took at least six hours per day.  *Id.* at 3, ¶ 8.  Plaintiff had to plow through the snow to reach his horses. *See id.*

On January 28, 2019, defendant Deputy Leigh Cochran, the animal control officer for the Park County Sheriff's Office, received complaints regarding thin horses at one of plaintiff's ranches.  *See id.*, ¶ 10.  Deputy Cochran went to plaintiff's ranch, but could not find any horses, so she contacted plaintiff to inform him of the complaints. *See id.*  On January 29, 2019, another deputy received a call regarding a dead horse on the same ranch; Deputy Cochran went to the ranch and found the dead horse.  *See id.*, ¶ 11.  Deputy Cochran again told plaintiff about the complaints regarding thin horses on his ranch.  *Id.*  That same day, Deputy Cochran "posted a Notice of Warning that Mr. Walker has to provide food, water, and veterinary case for the horses."  *See id.* at 4, ¶ 12.  On February 4, Deputy Cochran went back to plaintiff's ranch, where she saw that plaintiff was feeding his horses, buffalo, and cattle in the same pasture; over the next few days plaintiff separated the animals "so they could be fed independently."  *Id.*, ¶ 14.

On February 14, Deputy Cochran contacted defendant Bobbi Priestly, the manager of Field Services for defendant Dumb Friends League, Harmony Equine Center ("Harmony") and a peace officer with the Colorado Department of Agriculture. *See id.* at 1, 4 ¶¶ 1, 15. Agent Priestly went to plaintiff's ranch, where she saw plaintiff moving his horses.  *Id.*  Deputy Cochran issued a second notice to plaintiff on February 14, alerting him that he had to provide food, water, and veterinary care to his herd.  *See*

*id.* Although the notice stated that plaintiff had until February 18 to improve the condition of his herd, Deputy Cochran told plaintiff that he had 30 days. *id.* at 16. On February 15, Deputy Cochran and Agent Priestly returned to plaintiff's ranch. *See id.* at 5, ¶ 17. Plaintiff moved seven skinny horses closer to the ranch buildings and, after a drive through plaintiff's fields, Deputy Cochran identified four additional horses that should "be brought to the pens." *Id.* Later that day, plaintiff's veterinarian inspected one horse in the "skinny pen," and told plaintiff to "keep doing what he was doing"; the veterinarian said nothing regarding the other horses in that pen. *Id.*, ¶ 18.

On February 16, Deputy Cochran returned to the ranch and suggested an alternate feeding plan for the horses. *See id.*, ¶ 19. Another veterinarian also came to assess one of plaintiff's horses, "rated the horse as a 1 on the Henneke scoring system, which is the lowest rating out of nine points," and recommended a particular feeding plan, to which plaintiff agreed. *Id.* Deputy Cochran returned on February 18 and "noted that all the horses were eating better grass hay and all had water." *Id.*, ¶ 20. One horse, however, was not doing well; plaintiff "did not think she would survive." *Id.* The next day, Agent Priestly informed Deputy Cochran that she did not think that plaintiff had been properly caring for his animals and "their survival was not likely" if left in plaintiff's care. *Id.* at 5-6, ¶ 21. Deputy Cochran agreed and, as a result, "drafted an affidavit to support a warrant to seize the horses." *Id.* at 6, ¶ 22. Deputy Cochran "signed all the search warrants used" and "Agent Priestly decided to execute the warrants." *Id.* at 7, ¶ 26. On February 21, 2019, "defendants" went to plaintiff's ranch with "11 trailers and 21 people" and seized 48 horses. *Id.* at 6, ¶ 24. Defendants seized an additional 10 horses on February 25 and 27, for a total of 58 horses. *Id.*,

¶ 25.  The horses were brought to Harmony.[2]  *See id.* at 8, ¶ 26.

Plaintiff attempted to retrieve his horses.  *See id.* at 8, ¶ 30.  To do so, however, "he had to put up a bond of $250 per month for each horse to pay for its care."  *Id.*  This meant he had to pay an upfront bond of $15,450 and that same amount every month thereafter.  *Id.*  Plaintiff could not afford the bond.  *Id.*

The district attorney for Park County charged plaintiff with eight counts of animal cruelty, for which plaintiff was found not guilty on December 6, 2019.  *Id.*, ¶ 32.  After he was found not guilty, plaintiff asked Harmony to return any horses remaining in its possession.  *Id.* at 8-9, ¶ 34.  Harmony "would not return the remaining five horses."[3]  *Id.*

Plaintiff filed suit on February 12, 2020.  *See* Docket No. 1.  In his amended complaint, plaintiff brings five claims: (1) unconstitutional seizure "in violation of the Fourth Amendment or the [Fourteenth] Amendment, or both" against all defendants; (2) malicious prosecution in violation of the Fourth Amendment against all defendants; (3) state law civil theft against Agent Priestly and Deputy Cochran; (4) state law outrageous conduct against Agent Priestly; and (5) state law defamation against Agent Priestly.  *See* Docket No. 18 at 9-13.  *See* Docket No. 18 at 6.  Both the Law Enforcement defendants and the Harmony defendants have filed motions to dismiss, *see* Docket Nos. 32-33, arguing, inter alia, that they are entitled to qualified immunity and, even if

---

[2] Plaintiff lists the Dumb Friend Friends League as a defendant in this case, but his allegations often refer to the Humane Society.  While both are animal organizations, they are different.  Nevertheless, given that the Dumb Friends League was properly served and has filed a motion to dismiss, the Court assumes that plaintiff meant the Dumb Friends League and not the Humane Society in his allegations.

[3] Plaintiff believes the other horses were adopted.  *Id.*

4

they were not, plaintiff has failed to state a claim.  *See id.*

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  However, a plaintiff still must provide "supporting factual averments" with his allegations.  *Cory v. Allstate Insurance*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)).  Otherwise, the Court need not accept conclusory allegations.  *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to

dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III.  ANALYSIS

Before addressing the merits of defendants' motions to dismiss, the Court first notes that plaintiff has conceded that several claims should be dismissed.  First, plaintiff "concurs that the § 1983 malicious prosecution claim against Harmony may be dismissed."  *See* Docket No. 40 at 9.  Plaintiff also agrees to dismiss his municipal liability claims against the Park County Sheriff's Office without prejudice.  *See* Docket No. 41 at 11.  Accordingly, the Court will dismiss these claims.

### A.  Fourth Amendment Seizure

All defendants argue that plaintiff has failed to provide any non-conclusory allegations that they committed an unreasonable seizure and, even if plaintiff did, defendants are entitled to qualified immunity.  *See* Docket No. 32 at 3-6; Docket No. 33 at 3-6.

Qualified immunity "protects public employees from both liability and 'from the burdens of litigation' arising from their exercise of discretion."  *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quoting *Allstate Sweeping, LLC v. Black*, 705 F.3d 1261, 1266 (10th Cir. 2013)).  For a claim to survive a qualified immunity defense, a

Apdx 161

plaintiff must "demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Id.* (quoting *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015)).  Courts are permitted to address the prongs of the qualified immunity analysis in any order that they wish and, should "think hard" before addressing both prongs of the analysis.  *See Hunt v. Bd of Regents of Univ. of N.M.*, 792 F. App'x 595, 600-01 (10th Cir. 2019) (unpublished) (citing *Camreta v. Greene*, 563 U.S. 692, 707 (2011)); *see also Yeasin v. Durham*, 719 F. App'x 844, 850 (10th Cir. 2018) (unpublished) ("We can analyze either prong of the qualified immunity test first and can resolve the case solely on the clearly established prong." (citing *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013)).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  Plaintiff can demonstrate that a right is clearly established "by identifying an on-point Supreme Court or published Tenth Circuit decision" establishing the unlawfulness of the defendant's actions.  *Cummings*, 913 F.3d at 1239 (quoting *Quinn*, 780 F.3d at 1005).  "Although it is not necessary for the facts in the cited authority to correspond exactly to the situation the plaintiff complains of, the 'plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.'" *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (quoting *Trotter v. Regents*, 219 F.3d 1179, 1184 (10th Cir. 2000)).

"The general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." *See Bailey v. United States*, 568 U.S. 186, 192 (2013). When a search or seizure is conducted pursuant to a warrant, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). However, issuance by a neutral magistrate does not necessarily end the inquiry. There are four situations where a seizure pursuant to a warrant will not provide an officer with qualified immunity: (1) "the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth"; (2) "[the] issuing magistrate wholly abandons her judicial role"; (3) "the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) "[the] warrant is so facially deficient that the executing officer could not reasonably believe it was valid." *See United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000) (citations, quotations, and alterations omitted).

The Court finds that plaintiff has failed to establish any of the four exceptions. Regarding the first, second, and third exceptions, none of plaintiff's allegations go to the falsity of the affidavit, the magistrate abandoning her judicial role, or the facial deficiency of the warrant. *See Danhauer*, 229 F.3d at 1007. Nor does plaintiff argue in either of his responses that these three exceptions apply.[4] *See* Docket Nos. 40, 41.

---

[4] Plaintiff in particular could not argue that the affidavit contained false or misleading information as the affidavit contains information and allegations nearly identical to those found in plaintiff's complaint.

Rather, plaintiff contends that he has alleged that there was no probable cause to seize his horses.  *See* Docket No. 40 at 5-6; Docket No. 41 at 5-6.  Thus, plaintiff's allegations and arguments go to the third exception, the indicia of probable cause to support the warrant itself.   *See Danhauer*, 229 F.3d at 1007.

Under the third exception, a suit against an officer will be allowed "when it is obvious that no reasonably competent officer would have concluded that a warrant should issue."  *See Millender*, 565 U.S. at 547.  However, "the threshold for establishing this exception is a high one."  *Id.*  "[I]n the ordinary case, an officer cannot be expected to question the magistrate's probable cause-determination because it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant."  *Id.* (citing *United States vs. Leon*, 468 U.S. 897, 921 (1983)).  "[W]here a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable."  *See id.* at 547-48 (citing *Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986)).

In reviewing the affidavit, the Court finds that it is not so lacking in indicia of probable cause such that the issuance of the warrant was not within the range of professional competence.[5]  *See Millender*, 565 U.S. 547.  The affidavit states the

---

[5] Although this is a motion to dismiss, the Court may consider the warrants and the affidavits supporting so long as the are relied on in the complaint, "central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *See Rathbun v. Montoya*, 628 F. App'x 988, 990 n.2 (10th Cir. 2015) (unpublished) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (evaluating the warrants and affidavits in reviewing a Fourth Amendment seizure case).  Plaintiff does not object to the use of these documents or dispute their authenticity.  *See, e.g.*, Docket No. 40 at 2-3 n.3.

following relevant facts: (1) Deputy Cochran received reports regarding thin horses off Highway 24 and made contact with plaintiff regarding those reports; (2) another deputy received complaints regarding thin horses off the same highway; (3) a citizen reported that she saw a dead horse and that no one had been feeding the horses; (4) Deputy Cochran saw the dead horse herself, which was "mostly covered by snow"; (5) plaintiff told Deputy Cochran he had been unable to move his horses and that the dead horse probably died from the cold; (6) plaintiff informed Deputy Cochran "that he could not access the far back north side of the property due to large snow drifts"; (7) plaintiff had not separated his previously identified thin horses from the rest of his herd and plaintiff "could not point out specifically where the nine horses were"; (8) plaintiff told Deputy Cochran that "two, possibly four" horses had died; (9) plaintiff informed Deputy Cochran he did not want the horses at the ranch on two separate occasions, to which Deputy Cochran responded that the horses needed adequate care and feeding; (10) on a visit to plaintiff's ranch, Deputy Cochran and plaintiff rode a tractor through plaintiff's fields and found more thin horses; plaintiff was "shocked" that the horses were thin "because they were fine" the week prior; (11) on several occasions, starting on January 30, Deputy Cochran directed plaintiff to provide his thin horses different feed, but plaintiff did not feed "better hay" until February 18; however, at that point, he had still not fed the horses the feed directed by Deputy Cochran; (12) a veterinarian assessed one of plaintiff's horses on the Henneke body score and rated it a one, the lowest score, because "[t]he horse had little to no body fat that could be felt, with deep spaces between the ribs" and the "withers down the back to the hips and tail head were all protruding"; and (13) "there could be as many as ten" deceased horses and two were

missing from the originally identified nine.  *See* Docket No. 32-1 at 4-8.

The affidavit paints a clear picture: the weather was harsh and plaintiff's horses were in rough condition.  Plaintiff failed to provide his horses the appropriate feed until several weeks after he was directed, and at least two horses, and possibly ten, had died.  Plaintiff refused to bring his horses near the barn for proper shelter until he was given several warnings and directives.  This is not a situation where there is nothing to connect plaintiff to the horses, the care received, or the ranch.  *See United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005) (finding an affidavit lacking where there was nothing connecting the plaintiff to criminal activity except his status as a felon).  "An affidavit establishes probable cause . . . if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place."  *See United States v. Knox*, 883 F.3d 1262, 1275 (10th Cir. 2018).  The affidavit here describes plaintiff's property, plaintiff's horses, plaintiff's care of the horses, and plaintiff's dilatory response to caring for the horses.  This establishes a fair probability that plaintiff had not been adequately caring for his herd and is sufficient indicia of probability to support the magistrate's issuance of the warrant.

Plaintiff argues that there was no probable cause because: (1) Deputy Cochran and Agent Priestly should have known that the cold weather would eventually end; (2) a veterinarian at Harmony, post seizure, found the majority of his horses healthy; (3) there was a conspiracy to seize his horses so that Harmony could profit off their sale; and (4) he was acquitted of animal cruelty after a jury trial.  See Docket No. 40 at 4-7; Docket No. 41 at 5-8.  Regarding two and four, the post-hoc veterinary analysis and criminal acquittal, both of those occurred after the warrant was issued and, as a result,

are irrelevant to whether there was sufficient information in the affidavit to support the magistrate's issuance of the warrant.  The question is not whether, after the warrant was issued, other information came to light that might have contradicted the magistrate's determination, but whether, in the affidavit itself, there was sufficient information to support the magistrate's conclusion.  The Court already found that there was and, thus, any post-hoc information is irrelevant.

As to the alleged conspiracy, plaintiff provides no "supporting factual averments," *Cory*, 583 F.3d at 1244, for his allegation that there was some conspiracy to seize his horses.  Rather, he states in conclusory fashion that, because Harmony profits off the selling of seized horses, there must be some conspiracy.  *See* Docket No. 18 at 7, ¶ 26 ("The business of the Harmony Equine Center is to provide the horses for adoption by private owners.  Thus, the seizures promoted its business.").  However, without any supporting facts – when the conspiracy started, how it was enacted, who was part of it – plaintiff's allegation is merely conclusory, and the Court need not accept it.  *See Cory*, 583 F.3d at 1244.  Finally, the Court finds plaintiff's argument regarding the weather unpersuasive.  He alleges that any "cruelty to the animals . . . was caused by an act of God," and that Deputy Cochran and Agent Priestly should have known that the weather would warm up.  *See* Docket No. 18 at 5-6, 10, ¶¶ 21, 40.  However, even if the weather is out of plaintiff's control, plaintiff provides no support for argument that he is not required to respond to that weather and act accordingly such that there was no probable cause to issue the warrant.

Plaintiff, in response to the motions to dismiss, cursorily makes a second argument, that the warrants were overbroad.  *See* Docket No. 41 at 6 ("The instant

case is controlled by the line of cases in which an officer seizes items not listed in the warrant."). The Court notes that nowhere in plaintiff's complaint are there any allegations regarding the overbreadth or non-specificity of the warrants.[6] This alone is sufficient to dismiss plaintiff's claim. However, the Court finds that, even if plaintiff sufficiently presented this argument in his complaint, the warrants were not so overbroad as to be invalid.

Under the Fourth Amendment, warrants must (1) be supported by probable cause and (2) "particularly describe the place to be searched, and the persons or things to be seized." *See Rathbun v. Montoya*, 628 F. App'x 988, 993 (10th Cir. 2015) (unpublished) (citing U.S. Const. amend. IV). "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Pulliam*, 748 F.3d 967, 972 (10th Cir. 2014) (citation and quotations omitted). However, even if overbroad, a validly issued warrant will shield an officer from suit so long as it is not unreasonable for the officer to conclude that the warrant permitted the officers to seize the items that were seized. *See Rathbun*, 628 F. App'x at 994. An officer can "reasonably conclude[] that the warrant was sufficiently particular, even though it described the items to be seized in broad or generic terms, given the nature of the crime[] under investigation." *Id.*; *see also United States v. Cooper*, 654 F.3d 1104, 1127 (10th Cir. 2011) ("[W]hether a search warrant is sufficiently particular depends in part on the nature of the crimes being investigated.").

---

[6] Plaintiff does allege that extra horses were seized in violation of the Fourteenth Amendment, *see* Docket No. 18 at 10, ¶ 41, but that allegation does not reference the breadth of the warrant, just the breadth of the seizure and the corresponding bonding scheme.

The Court finds that it was not unreasonable for defendants to conclude that the warrant permitted them to seize the horses seized.  First, as described above, the warrant was validly issued and supported by probable cause.  Second, the context of the underlying criminal allegations was that plaintiff was failing to provide care for his herd.  The warrant states that, "[b]ased on veterinary recommendations[,] equines will be seized and impounded."  *See* Docket No. 32-2 at 2.  This sufficiently describes that any horse recommended by a veterinarian to be seized is permitted to be seized.  The seizing officers could reasonably conclude – indeed the warrant specifically states – that any horse recommended to be seized shall be seized, particularly given the context of the underlying criminal charges.  Plaintiff does not argue, or allege, that the horses were not seized pursuant to veterinarian recommendation, rather, plaintiff "disputes which horses met this criteria."  *See* Docket No. 41 at 6.  But plaintiff disagreeing with a veterinarian's recommendation – in a response to a motion to dismiss and not his complaint – is not the appropriate constitutional test.  The question is whether the validly issued warrant described the items to be seized with sufficient particularity such that a reasonable officer could conclude she was permitted to seize the items seized.  *See Rathbun*, 628 F. App'x at 994.  That was the situation here.

In sum, the Court finds that the horses were seized pursuant to a validly issued warrant, that the warrant described with appropriate particularity the horses to be seized, and that the warrant was supported by sufficient probable cause.  As a result, Deputy Cochran and Agent Priestly are entitled to qualified immunity and plaintiff's

claim for unreasonable seizure is dismissed.[7]

### B.  Fourteenth Amendment Excessive Bond

Plaintiff asserts that defendants "seized [] extra horses knowing that this would make it impossible for [plaintiff] to bond out the horses and, therefore, Harmony could keep the additional horses."  *See* Docket No. 18 at 10, ¶ 41.  He alleges that "[t]his violates the 14th Amendment."  *Id.*  Defendants argue that plaintiff's allegations regarding the bonding scheme are conclusory and therefore should be dismissed.  *See* Docket No. 46 at 7; Docket No. 47 at 1.

First, the basis for plaintiff's claim that his Fourteenth Amendment rights were violated is unclear.  The only indication in his complaint is that the seizure of the "extra horses" violates the Fourteenth Amendment because they were seized in order to "make it impossible for [plaintiff] to bond out the horses."  *See* Docket No. 18 at 10, ¶ 41.  Therefore, the Court does not know if plaintiff is asserting an excessive fine claim based on the Eighth Amendment made applicable to the states by the Fourteenth Amendment, a procedural due process claim, or a substantive due process claim.  *See, e.g.*, *Campbell v. City of Spencer*, 682 F.3d 1278, 1285 (10th Cir. 2012) (excessive fine claim for seized horses).  Additionally, plaintiff's description of the bonding requirement is vague.  He provides no details, other than to say that "he had to put up a bond of $250 per month for each horse."  *See* Docket No. 18 at 8, ¶ 30.  Thus, there are no

---

[7] Plaintiff also asserts a claim against Harmony for unreasonable seizure, but he provides no support for Harmony being a government official such that § 1983 is applicable to it or that it had anything to do with the preparation or execution of the warrant.  Plaintiff's only argument is that Harmony is "liable under §1983 because it was the beneficiary of the conspiracy to seize as many horses as possible to fulfill the business purposes of Harmony."  *See* Docket No. 40 at 8-9.  The Court already concluded that plaintiff's allegations regarding the conspiracy are conclusory.

allegations regarding whether this bonding requirement is a municipal ordinance, a state statute, or simply Harmony's boarding rules.

Second, as already described above, plaintiff has failed to assert any non-conclusory allegations regarding a bonding conspiracy or claim.  Without any well-pled allegations, plaintiff cannot succeed against defendants.

Third, if the "bond" is simply Harmony's own rules and fee for taking care of boarded horses, plaintiff fails to explain how this private organization's boarding rules could supply the requisite state action to support a § 1983 claim, whether against Harmony or any of the defendants.  In plaintiff's initial citation to *Robbins v. City of Greeley*, No. 15-cv-00683-RPM, 2016 WL 454999 (D. Colo. Feb. 5, 2016), plaintiff suggests that the "bond" requirement is just boarding fees, as he states "*[a]lthough the bond was pursuant to a city municipal code*, the principal in *Robbins* is the same as that herein."  *See* Docket No. 40 at 7.  This suggests that, unlike the municipal bond in *Robbins*, the bond here is Harmony's requirement.  However, plaintiff later argues that the "abuse of this bonding statute was simply a cover used to steal the horses."  *Id.* at 8.  Given that plaintiff provides no support for the proposition that Harmony's private boarding fees could violate the Fourteenth Amendment and given plaintiff's statement that there is a "bonding statute," the Court assumes plaintiff is alleging that there is some ordinance or statute that requires the horses to be bonded at $250 per animal per month.

Fourth, even assuming as much, there are no allegations connecting defendants to the bonding requirement.  If plaintiff is alleging that (1) the bonding scheme is excessive, (2) he was denied due process to challenge it, or (3) the scheme violates

substantive due process, plaintiff has failed to allege that any of the named defendants are responsible for the underlying bond structure or his denial of due process, substantive or procedural.  Rather, he only alleges that seizing extra horses would benefit Harmony.  *See* Docket No. 18 at 10, ¶ 41.  However, as already concluded, the horses were seized pursuant to a valid warrant.  Plaintiff's real issue, then, is with the underlying bonding scheme, which, to avoid having the horses adopted, forces him to pay to have them taken care of by Harmony, regardless of the number of horses seized.  But plaintiff has not cited a single case where the officers executing a warrant could be liable under §1983 for the bond requirements concerning the seized property or where a private organization responsible for holding the seized property at the direction of law enforcement could be liable under § 1983.  Nor has he provided any allegations or argument that defendants prevented plaintiff from exercising his procedural due process rights to challenge the scheme.

Plaintiff's citation to *Robbins* is unpersuasive.  There, the plaintiff had her dogs seized and was required to pay a bond to have the dogs held by the Humane Society during the pendency of her criminal case.  *See Robbins*, 2016 WL 454999, at *3.  The plaintiff could not pay the bond, her dogs were taken and either euthanized or adopted, and she was eventually acquitted in the underlying criminal trial.  *Id.* at *3-*4.  Moreover, she was not permitted to challenge the scheme until after she was acquitted, and the corresponding criminal motion to suppress the evidence that resulted in her dogs being taken was not ruled on until some time after the dogs had been taken from her.  *See id.* at *3-*5.  The court ruled that the procedural due process claim was "so egregious" that it was also a violation of substantive due process.  *See id.* at *5.  *Robbins* is different

17

from plaintiff's situation in three respects.  First, the plaintiff in *Robbins* sued the City of Greeley, whose municipal bond scheme caused plaintiff to lose her animals, not the officers who seized her dogs or the shelter who held them.  *See id.* at *1.  Second, the plaintiff was never permitted to challenge the bonding process and the motion to suppress was ruled on long after her dogs were taken.  *See id.* at *3-4.  By contrast, plaintiff here has not alleged that he was unable to challenge the bonding scheme or that he ever attempted to challenge it.   Finally, the dogs were seized illegally in *Robbins* as a result of a traffic stop that lacked probable cause.  *See id.* at *4.  Here, there was sufficient probable cause for the magistrate judge to issue the warrant.  In sum, *Robbins* dealt with a plaintiff who (1) sued the proper entity; (2) attempted to challenge the bonding scheme as unconstitutional; and (3) was deprived of challenging that scheme in a timely manner in order to prevent the adoption or euthanization of her animals.  Plaintiff, on the other hand, (1) sues the officers rather than the entity whose code requires the bond; (2) does not allege that he attempted to challenge the scheme at any point; and (3) had his horses seized pursuant to a valid warrant.  *Robbins* is thus inapposite.

In sum, plaintiff has failed to plead any non-conclusory allegations regarding a bonding conspiracy or scheme and has pled no allegations whatsoever that defendants are responsible for the underlying bonding requirement.  As a result, plaintiff's Fourteenth Amendment claim will be dismissed.

### C.  Malicious Prosecution

Defendants next seek to dismiss plaintiff's claim for malicious prosecution.  *See* Docket No. 32 at 7; Docket No. 33 at 6-8.  Defendants essentially argue that (1) there

was no constitutional violation and (2) they would be entitled to qualified immunity even if there was. *See id.*; *see also* Docket No. 47 at 1. As stated above, plaintiff agrees that the malicious prosecution claim against Harmony should be dismissed. *See* Docket No. 40 at 9. However, he contends that he has made sufficient allegations to support his claims against both Deputy Cochran and Agent Priestly. *See id.*; *see also* Docket No. 41 at 9-10.

To state a claim for malicious prosecution, a plaintiff must adequately allege: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *See Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (citation omitted). Even assuming that plaintiff can establish elements one, two, four, and five, Deputy Cochran and Agent Priestly would be protected by qualified immunity because the seizure of his horses and prosecution for animal cruelty occurred pursuant to a validly issued warrant. As a result, qualified immunity protects both Deputy Cochran and Agent Priestly from suit for malicious prosecution under the Fourth Amendment. *See Stonecipher v. Valles*, 759 F.3d 1134, 1147 (10th Cir. 2014) (applying the Fourth Amendment qualified immunity analysis to conclude an officer was shielded from liability for malicious prosecution); *see also Bailey v. Twomey*, 791 F. App'x 724, 733-35 (10th Cir. 2019) (unpublished) (same).[8]

---

[8] While *Bailey* questions whether "actual" or "arguable" probable cause is the relevant standard for qualified immunity for warrantless arrests, *see Bailey*, 791 F. App'x at 733-34, that discussion is irrelevant for the purposes of plaintiff's claim because plaintiff's horses were seized pursuant to a warrant. The Fourth Amendment qualified immunity analysis applies to the probable cause prong of the malicious

### D.  Remaining State Law Claims

Plaintiff's remaining claims arise under state law.  *See* Docket No. 18 at 11-13.

Although the Court may exercise supplemental jurisdiction over state law claims if there

is a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) provides that a district court

"may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district

court has dismissed all claims over which it has original jurisdiction."  The Tenth Circuit

has instructed that, "if federal claims are dismissed before trial, leaving only issues of

state law," courts should "decline to exercise pendent jurisdiction . . . absent compelling

reasons to the contrary."  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010)

(alterations, citations, and quotations omitted).  This rule is consistent with "[n]otions of

comity and federalism," which "demand that a state court try its own lawsuits."  *Id.* at

1230 (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)).

Plaintiff does not argue that the Court should retain jurisdiction over his state law

claims if his federal claims are dismissed, and the Court does not find any compelling

reason to do so.  Accordingly, plaintiff's third, fourth, and fifth claims for relief will be

dismissed without prejudice.  *See Thompson v. City of Shawnee*, 464 F. App'x 720, 726

(10th Cir. 2012) (unpublished) (holding that, when declining to exercise supplemental

jurisdiction over state-law claims, the court "had discretion either to remand the claims

to the state court or to dismiss them"); *see also* Colo. Rev. Stat. § 13-80-111 (permitting

claims properly commenced within the statute of limitations to be re-filed if involuntarily

dismissed because of lack of jurisdiction); *Artis v. Dist. of Columbia*, 138 S. Ct. 594, 598

---

prosecution claim, although the analysis may change depending on whether the arrest
or seizure occurred with or without a warrant.

(2018) (holding that 28 U.S.C. § 1367(d) tolls the statute of limitations for state law claims asserted under § 1367(a) during the pendency of the federal litigation in which such claims are brought and for thirty days following involuntary dismissal of those claims on jurisdictional grounds).

## IV.   CONCLUSION

For these reasons, it is

**ORDERED** that the Dumb Friend League Harmony Equine Center and Bobbi Priestly's Motion to Dismiss [Docket No. 32] is **GRANTED**.  It is further

**ORDERED** that the Park County Sheriff's Office and Deputy Leigh Cochran's Motion to Dismiss [Docket No. 33] is **GRANTED**.  It is further

**ORDERED** that plaintiff's claim against the Park County Sheriff's Office for an unconstitutional policy in violation of 42 U.S.C. § 1983 is **DISMISSED** without prejudice. It is further

**ORDERED** that the remainder of plaintiff's first and second claims against all defendants are **DISMISSED** with prejudice.  It is further

**ORDERED** that plaintiff's third, fourth, and fifth claims are **DISMISSED** without prejudice.  It is further

**ORDERED** that judgment shall enter for defendants and against plaintiff on all claims.  It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.

DATED March 10, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

Apdx 177

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00364-PAB-NYW

MARK WALKER,

      Plaintiff,

v.

PARK COUNTY SHERIFF'S OFFICE,
DEPUTY LEIGH COCHRAN,
DUMB FRIENDS LEAGUE HARMONY EQUINE CENTER, and
BOBBI PRIESTLEY,

      Defendants.

---

## FINAL JUDGMENT

---

      In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

      Pursuant to the Order [Docket No. 49] of Chief United States District Judge Philip A. Brimmer entered on March 10, 2021, it is

      ORDERED that the Dumb Friend League Harmony Equine Center and Bobbi Priestly's Motion to Dismiss [Docket No. 32] is GRANTED.  It is further

      ORDERED that the Park County Sheriff's Office and Deputy Leigh Cochran's Motion to Dismiss [Docket No. 33] is GRANTED.  It is further

      ORDERED that plaintiff's claim against the Park County Sheriff's Office for an unconstitutional policy in violation of 42 U.S.C. § 1983 is DISMISSED without prejudice. It is further

      ORDERED that the remainder of plaintiff's first and second claims against all

defendants are DISMISSED with prejudice.  It is further

    ORDERED that plaintiff's third, fourth, and fifth claims are DISMISSED without

prejudice.  It is further

    ORDERED that judgment shall enter for defendants and against plaintiff on all

claims.  It is further

    ORDERED that defendants are awarded their costs, to be taxed by the Clerk of

the Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.  It is further

    ORDERED that this case is closed.

    Dated at Denver, Colorado this 10th day of March, 2021.

                                        FOR THE COURT:

                                        Jeffrey P. Colwell, Clerk


                                        By s/ S. Grimm_____
                                                    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 20-cv-00364-PAB-NYW

MARK WALKER,

      Plaintiff,

vs.

PARK COUNTY SHERIFF'S OFFICE, OFFICER LEIGH COCHRAN, DUMB FRIENDS
LEAGUE HARMONY EQUINE CENTER, and BOBBI PRIESTLEY,

      Defendants.

---

### NOTICE OF APPEAL

---

    Plaintiff Mark Walker, by his attorney Robert M. Liechty of ROBERT M LIECHTY PC,
gives notice that he is appealing in the above-named case to the United States Court of
Appeals for the Tenth Circuit from an order and judgment granting summary judgment
against both sets of defendants entered in this action on March 10, 2021.

    Respectfully submitted this April 6, 2021.

                By:    s/   *Robert M. Liechty*
                          Robert M. Liechty
                          ROBERT M LIECHTY PC
                          1800 Gaylord St.
                          Denver, Colorado 80206
                          Tel: (303) 861-5300
                          Fax: (303) 861-2746
                          Email:  rliechty@crossliechty.com
                          ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this April 6, 2021, a true and correct copy of the above **NOTICE OF APPEAL** was, unless otherwise indicated, filed electronically with the Court who provides notice to the following:

Cynthia Lowery-Graber
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, CO  80203-4541
cynthia.lowery-graber@bclplaw.com
Attorneys for Colorado Humane Society
and Bobbi Priestley

Andrew R. McLetchie
Eden R. Rolland
Matthew K. Sidran
FOWLER, SCHIMBERG, FLANAGAN & MCLETCHIE, P.C.
350 Indiana St., Suite 850
Golden, CO 80401
a_mcletchie@fsf-law.com
e_rolland@fsf-law.com
m_sidran@fsf-law.com
Attorneys for Park County Sheriff's Office
and Leigh Cochran

*Signed Original at Office of Robert M Liechty PC*

s/     *Robert Liechty*
Robert Liechty

2