Appeal No. 21-1119

# UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

Mark Walker, *Plaintiff-Appellant,*

*v.*

Park County Sheriff's Office, Deputy Leigh Cochran, Dumb Friends League Harmony Equine Center, and Bobbi Priestly, *Defendants-Appellees.*

On Appeal From the United States District Court
for the District of Colorado
The Honorable Philip A. Brimmer, Judge
Case No. 1:20-cv-00364-PAB-NYW

**BRIEF OF DEFENDANTS-APPELLEES DUMB FRIENDS LEAGUE HARMONY EQUINE CENTER AND BOBBI PRIESTLY**

Kutak Rock LLP
Tiffanie D. Stasiak
Lisa M. Saccomano
1801 California Street, Suite 3000
Denver, CO 80202
Telephone:  (303) 297-2400
Facsimile: (303) 292-7799
tiffanie.stasiak@kutakrock.com
lisa.saccomano@kutakrock.com

*Attorneys for Defendants-Appellees Dumb Friends League Harmony Equine Center and Bobbi Priestly*

**ORAL ARGUMENT IS NOT REQUESTED**

JULY 19, 2021

## **FED. R. CIV. P. 26.1 CORPORATE DISCLOSURE**

Dumb Friends League Harmony Equine Center is a facility of The Denver Dumb Friends League, a Colorado nonprofit corporation, which has no parent corporation and no publicly held corporation owning 10 percent or more of its stock.

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................... iii

STATEMENT OF RELATED CASES ................................................................... 1

STATEMENT OF ISSUES FOR REVIEW ........................................................... 1

STATEMENT OF THE CASE ............................................................................... 2

    A.    Brief Nature Of The Case ............................................................................ 2

    B.    Relevant Factual Background ...................................................................... 3

    C.    The Proceedings Below ............................................................................... 5

SUMMARY OF ARGUMENT .............................................................................. 7

ARGUMENT .......................................................................................................... 9

    A.    Walker's claims under 42 U.S.C. § 1983 against Agent Priestly
           should be dismissed on qualified immunity grounds ................................ 9

        1.    Standard of Review .......................................................................... 9

        2.    Walker failed to demonstrate that Agent Priestly violated
              his clearly established Fourth Amendment rights ................. 10

              a.    Deputy Cochran's supporting affidavits were not
                    "so lacking in indicia of probable cause" that
                    Agent Priestly should have concluded that it was
                    illegal to seize Walker's horses pursuant to the
                    search warrants .............................................................. 12

              b.    Agent Priestly did not rely on search warrants
                    supported by affidavits containing false or
                    otherwise misleading information ................................. 15

    B.    Walker failed to state a claim for relief against Harmony for
           unreasonable seizure in violation of 42 U.S.C. § 1983 ....................... 18

        1.    Standard of Review ........................................................................ 19

        2.    Walker fails to establish that Harmony has liability for
               civil damages under § 1983 ..................................................... 20

CONCLUSION .................................................................................................... 21

CERTIFICATION OF COMPLIANCE ............................................................... 22

CERTIFICATION OF DIGITAL SUBMISSIONS ............................................. 23

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*A.N. by and through Ponder v. Syling*,
  928 F.3d 1191 (10th Cir. 2019) ........................................................................9

*Adickes v. S. H. Kress & Co.*,
  398 U.S. 144 (1970)..........................................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................19

*Brown v. Montoya*,
  662 F.3d 1152 (10th Cir. 2011) ..........................................................................3

*Cavic v. Pioneer Astro Indus., Inc.*,
  825 F.2d 1421 (10th Cir. 1987) ........................................................................15

*Cory v. Allstate Insurance*,
  583 F.3d 1240 (10th Cir. 2009) ........................................................................19

*Durre v. Dempsey*,
  869 F.2d 543 (10th Cir.1989) ...........................................................................20

*Elder v. Holloway*,
  510 U.S. 510 (1994)..........................................................................................10

*Employees' Ret. Sys. of Rhode Island v. Williams Companies, Inc.*,
  889 F.3d 1153 (10th Cir. 2018) ........................................................................19

*Eureka-Carlisle Co. v. Rottman*,
  398 F.2d 1015 (10th Cir. 1968) ........................................................................15

*Hall v. Bellman*,
935 F.2d 1106 (10th Cir. 1991) .........................................................................19

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)..........................................................................................10

*Hunt v. Bennett*,
  17 F.3d 1263 (10th Cir. 1994) ..........................................................................20

*Kansas Penn Gaming, LLC v. Collins*,
  656 F.3d 1210 (10th Cir. 2011) ........................................................................19

iii

*Lugar v. Edmondson Oil Co.*,
  457 U.S. 922 (1982)......................................................................20

*Lyons v. Jefferson Bank & Tr.*,
  994 F.2d 716 (10th Cir. 1993) .....................................................15

*Malley v. Briggs*,
  475 U.S. 335 (1986)......................................................................10

*Messerschmidt v. Millender*,
  565 U.S. 535 (2012)......................................................................10

*Rathbun v. Montoya*,
  628 F. App'x 988 (10th Cir. 2015) ...........................................10, 17

*Schneider v. City of Grand Junction Police Dep't*,
  717 F.3d 760 (10th Cir. 2013) .....................................................21

*Smith v. United States*,
  561 F.3d 1090 (10th Cir. 2009) .....................................................4

*Stewart v. Donges*,
  915 F.2d 572 (10th Cir. 1990) .....................................................11

*United States v. Corral-Corral*,
  899 F.2d 927, 934 (10th Cir. 1990) ..............................................13

*United States v. Danhauer*,
  229 F.3d 1002 (10th Cir. 2000) ...............................................11, 12

*United States v. Knox*,
  883 F.3d 1262 (10th Cir. 2018) ...................................................12

*United States v. Leon*,
  468 U.S. 897 (1984)..................................................................10–13

*United States v. McKneely*,
  6 F.3d 1447 (10th Cir. 1993) .......................................................12

*United States v. Pulliam*,
  748 F.3d 967 (10th Cir. 2014) .....................................................17

*Weise v. Casper*,
  593 F.3d 1163 (10th Cir. 2010) .....................................................9

## STATUTES

U.S. Const., amend. IV. ..................................................2, 5, 7, 8, 10, 18

U.S. Const., amend. XIV. ..................................................................5, 7

iv

42 U.S.C. § 1983 ...................................................................... 1, 2, 5, 6, 8–10, 18–21

C.R.S. § 18-4-405 ...........................................................................................6

C.R.S. § 18-9-202 ........................................................................................3, 5

## RULES

10th Cir. R. 28.1..............................................................................................3

Fed. R. App. P. 39 .........................................................................................21

Fed. R. Civ. P. 12(b)(6)..............................................................................3, 9, 19

## STATEMENT OF RELATED CASES

There are no prior or related appeals. The United States District Court for the District of Colorado (the "District Court") below dismissed without prejudice three claims arising under state law, which Plaintiff-Appellant Mark Walker ("Walker") subsequently refiled in Colorado state court, in *Mark Walker v. Dumb Friends League Harmony Equine Center and Bobby Priestley*[1], Park County case number 2021CV0300031.

## STATEMENT OF ISSUES FOR REVIEW

1.      Whether Walker's claims under 42 U.S.C. § 1983 against Park County Sheriff's Deputy Leigh Cochran ("Deputy Cochran") and Colorado Bureau of Animal Protection Agent Bobbi Priestly ("Agent Priestly") should be dismissed on grounds of qualified immunity.

2.      Whether Walker's claim for unreasonable seizure under 42 U.S.C. § 1983 against Dumb Friends League Harmony Equine Center ("Harmony") should be dismissed for failure to state a claim upon which relief can be granted.

---

[1]Despite repeated corrections in the District Court below, Walker continues to misspell Ms. Priestly's name, which is Bobbi Priestly.

## STATEMENT OF THE CASE

**A.    Brief Nature Of The Case**

This action arises out of Walker's continued insistence that law enforcement lacked probable cause for the seizure of 58 horses pursuant to four search warrants issued by two different neutral magistrates—even after a Colorado state court denied Walker's motion to suppress all evidence seized pursuant to search warrants <u>and</u> the District Court dismissed Walker's complaint against Deputy Cochran and Agent Priestly for unreasonable seizure in violation of his rights under the Fourth Amendment and 42 U.S.C. § 1983. Walker argued to both tribunals that the warrants' supporting affidavits did not establish probable cause, and both tribunals rejected that argument. Walker now appeals the District Court's order dismissing the § 1983 claims against Deputy Cochran and Agent Priestly, again arguing that the supporting affidavits did not establish probable cause. He further argues—for the first time in any tribunal—that Deputy Cochran intentionally and misleadingly omitted material information from the affidavits. Both arguments fail.

**B.     Relevant Factual Background**

Walker is a horse breeder residing in Park County, Colorado.[2] Aplt. App. Vol.

1 at 13–14, Am. Compl. ¶¶ 1 & 5.[3] In the harsh winter conditions of January 2019,

Walker was caring for a herd of 78 horses. *Id.* at 14, Am. Compl. ¶¶ 4 & 7. He kept

48 horses at Badger Basin Ranch, 20 horses at Hartsel Springs Ranch, and 10 horses

at the Durbin ranch at 881 Salt Ranch Trail, Hartsel, Colorado. *Id.* at 14, Am. Compl.

¶ 4.

On January 28, 2019, Deputy Cochran with the Park County Sheriff's Office

("PCSO") received a report of thin horses at Badger Basin Ranch. *Id.* at 15, Am.

Compl. ¶ 10. The next day, Deputy Cochran discovered a dead horse at Badger Basin

Ranch. *Id.* at 15, Am. Compl. ¶ 11. On January 29 and February 14, 2019, Deputy

Cochran issued Notices of Warning for Walker to provide adequate food, water, and

veterinary care for the herd. *Id.* at 16, Am. Compl. ¶¶ 12 & 16. On February 20,

2019, Deputy Cochran applied for search warrants for each property based on

affidavits of probable cause that law enforcement would find evidence of horses

being neglected in violation of § 18-9-202, Colorado Revised Statutes. *Id.* at 44–50,

---

[2]We assume the truth of factual allegations in the complaint for purposes of a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

[3]Pursuant to 10th Cir. R. 28.1, references to the appendix are cited in this brief as Aplt. App. Vol. __ at __.

52–58, 60–62, & 64–66.[4] Deputy Cochran obtained four warrants to search

properties for horses for purposes of veterinary assessment:

> 1. Search Warrant for Badger Basin Ranch, 19PS13, issued on February 20, 2019, by County Court Judge Brian L. Green of the Park County Combined Courts in Colorado. *Id.* at 44–50.
>
> 2. Search Warrant for Badger Basin Ranch, 19PS14, issued on February 20, 2019, by County Court Judge Brian L. Green of the Park County Combined Courts in Colorado.[5] *Id.* at 52–58.
>
> 3. Search Warrant for Hartsel Springs Ranch, 19PS15, issued on February 21, 2019, by District Court Judge Stephen A. Groome of the Park County Combined Courts in Colorado. *Id.* at 60–61.
>
> 4. Search Warrant for the property at 881 Salt Ranch Trail, Hartsel, Colorado, 19PS16, issued on February 21, 2019, by District Court Judge Stephen A. Groome of the Park County Combined Courts in Colorado. *Id.* at 64–66.

In each warrant, the issuing judge provided that all horses "will be assessed by a

Veterinarian for any and all compromising health conditions to include physical

injuries" and that horses would be seized and impounded "based on veterinary

recommendation." *Id.* at 44, 52, 60, & 64.

---

[4]It is appropriate for this Court to consider the warrants and supporting affidavits even though Walker did not attach them to the complaint because they are central to his claim and he does not dispute their authenticity. Aplt. App. Vol. 2 at 164; *see also id.* at 117; *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).
[5]This second warrant for Badger Basin Ranch provided law enforcement with the additional authority to collect samples from potential feed sources for testing to determine nutritional value. Aplt. App. Vol. 1 at 52.

4

On February 21, 25, and 27, 2019, law enforcement including Deputy Cochran and Agent Priestly searched the three properties and seized and impounded a total of 58 horses from Walker's herd based on veterinary recommendation. *Id.* at 18, Am. Compl. ¶¶ 24–25. The horses were transported to Harmony Equine Center for care. *Id.* at 19, Am. Compl. ¶ 26.

Walker was subsequently charged with eight counts of cruelty to animals under § 18-9-202, Colorado Revised Statutes. *Id.* at 20, Am. Compl. ¶ 32. He was acquitted of all charges at trial on December 6, 2019. *Id.* After his acquittal, Walker attempted to regain possession of some of the seized horses from Harmony. *Id.*, Am. Compl. ¶ 34. However, Walker had surrendered ownership of the horses because of his failure to pay for their cost of care during the pendency of the criminal prosecution. *Id.*, Am. Compl. ¶ 30.

## C.    The Proceedings Below

On February 12, 2020, Walker initiated a lawsuit in the District Court against Deputy Cochran, Agent Priestly, PCSO, and Harmony. Aplt. App Vol. 1 at 1.

On May 19, 2020, Walker filed an amended complaint (the "Amended Complaint"), asserting five claims for relief:

(1)    Unconstitutional Seizure in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments, against all defendants ("First Claim for Relief");

(2)    Malicious Prosecution in violation of 42 U.S.C. § 1983 and the Fourth Amendment, against all defendants ("Second Claim for Relief");

5

(3)    Civil Theft in violation of C.R.S. § 18-4-405, against Harmony and Agent Priestly ("Third Claim for Relief");

(4)    Outrageous Conduct in violation of Colorado common law, against Agent Priestly ("Fourth Claim for Relief"); and

(5)    Defamation in violation of Colorado common law, against Agent Priestly ("Fifth Claim for Relief").

*Id.* at 21–25.

On June 5, 2020, Agent Priestly and Harmony jointly filed a motion to dismiss the claims against them. *Id.* at 27. On June 9, 2020, Deputy Cochran and PSCO jointly filed their motion to dismiss. *Id.* at 67.

On March 10, 2021, the District Court issued its order granting the motions to dismiss (the "Order"). Aplt. App. Vol. 2 at 156. The District Court dismissed the First and Second Claims for Relief against Deputy Cochran and Agent Priestly with prejudice on grounds of qualified immunity. *Id.* at 169–70 & 174. The District Court dismissed the First Claim for Relief against Harmony with prejudice on grounds that Walker failed to plead sufficient facts to state a claim for relief under § 1983 against Harmony, a private non-profit facility. *Id.* at 170. It dismissed the Second Claim for Relief against Harmony with prejudice because Walker conceded the Second Claim for Relief should be dismissed with respect to Harmony. *Id.* at 161. The District Court dismissed the First and Second Claims for Relief against PSCO because Walker agreed to dismiss those claims without prejudice. *Id.* at 161.

Finally, the District Court dismissed the Third, Fourth, and Fifth Claims for Relief without prejudice by declining to exercise supplemental jurisdiction over state law claims after dismissal of the First and Second Claims for Relief. *Id.* at 175.

On April 6, 2021, Walker filed a timely notice of appeal. *Id.* at 180.

On June 5, 2021, Walker refiled his Third, Fourth, and Fifth Claims for Relief in Colorado state court, Park County case number 2021CV0300031.

On June 17, 2021, Walker filed his opening brief in this appeal (the "Opening Brief"). Walker indicated that he was abandoning his First Claim for Relief with respect to the Fourteenth Amendment, but not with respect to the Fourth Amendment. Opening Brief at 4 n. 2. He then argued that "[t]he officers did not have qualified immunity because the affidavit supporting the warrant did not establish probable cause and, second, materially mislead the issuing magistrate." *Id.* at 16. He requests that this Court reverse the decision of the District Court and remand for further proceedings. *Id.* at 25.

## SUMMARY OF ARGUMENT

This action arises out of Walker's continued insistence that law enforcement lacked probable cause for the seizure of 58 horses pursuant to four search warrants issued by two different neutral magistrates—even after a Colorado state court judge denied Walker's motion to suppress all evidence seized pursuant to search warrants and the District Court dismissed Walker's complaint against Deputy Cochran and

Agent Priestly for unreasonable seizure in violation of his rights under the Fourth Amendment and 42 U.S.C. § 1983.

As the District Court concluded below, Walker failed to meet his burden to demonstrate that Agent Priestly violated Walker's clearly established constitutional rights. He also failed to allege sufficient facts establishing that Harmony, a private non-profit facility, conspired with state actors to deprive him of his Fourth Amendment rights in violation of § 1983.

In its Order, the District Court noted that Walker never argued that the probable cause affidavits supporting the search warrants contained false or misleading information. Aplt. App. Vol. 2 at 163. The District Court further observed in a footnote that Walker could not have argued that Deputy Cochran's affidavits contained false information, given that the observations in affidavits were nearly identical to the factual allegations in Walker's Amended Complaint. *Id*.

Walker seemingly took the District Court's Order as a cue, arguing in his Opening Brief for the very first time that "Deputy Cochran intentionally omitted [material facts] from the affidavit to hide the influence of Agent Priesley [sic]." Opening Brief at 19. But Walker cannot continue tweaking his factual allegations to raise new arguments that he did not preserve for appeal. Walker did not allege in the Amended Complaint that Deputy Cochran intentionally omitted material facts from the affidavit, see generally Aplt. App. Vol. 1 at 13–25, and he did not argue to the

8

District Court that Deputy Cochran and Agent Priestly were not entitled to qualified immunity on that ground, Aplt. App. Vol. 2 at 163. In any event, Walker's wholly conclusory and speculative allegation that Deputy Cochran intentionally omitted material facts from the affidavit does not defeat qualified immunity for either Deputy Cochran or Agent Priestly.

For these reasons, Agent Priestly respectfully requests that this Court affirm the District Court's dismissal of the § 1983 claims against her on grounds of qualified immunity. Harmony respectfully requests that the Court affirm the District Court's dismissal of the unreasonable seizure § 1983 claim against it, as well.

## **ARGUMENT**

### A.    **Walker's claims under 42 U.S.C. § 1983 against Agent Priestly should be dismissed on qualified immunity grounds**

#### 1.    Standard of Review

The Court "reviews de novo a district court's grant of a motion to dismiss based on qualified immunity." *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010). When a defendant raises a qualified immunity defense in a Fed. R. Civ. P. 12(b)(6) motion, "the court must dismiss the action unless the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation." *A.N. by and through Ponder v. Syling*, 928 F.3d 1191, 1196 (10th Cir. 2019).

2.    <u>Walker failed to demonstrate that Agent Priestly violated his clearly established Fourth Amendment rights</u>

The Fourth Amendment prohibits unreasonable searches and seizures, and "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers [conducting a search or seizure] acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).

Thus, ordinarily, law enforcement officers may rely on a warrant issued by a neutral magistrate without facing the prospect of any civil liability in an action alleging violation of Fourth Amendment rights. *Id.* at 547; *see also Elder v. Holloway*, 510 U.S. 510, 514 (1994) ("The central purpose of affording public officials qualified immunity from suit is to protect them from 'undue interference with their duties and from potentially disabling threats of liability.'") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)). Officers can also ordinarily rely on the authority granted by the magistrate in the warrant to seize evidence. *See id.*; *Rathbun v. Montoya*, 628 F. App'x 988, 994–95 (10th Cir. 2015).

Officers cannot rely on a warrant to conduct a search or seizure, however, when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt*, 565 U.S. at 547 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). There are four situations in which an officer may face liability under 42 U.S.C. § 1983 for unreasonably relying on a warrant (the "*Leon* exceptions"): (1) when affidavit supporting the warrant contained false information

10

that misled the issuing magistrate[6]; (2) when the issuing magistrate "wholly abandons her judicial role"; (3) when the affidavit supporting the warrant "is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) when the warrant is "so facially deficient" that the officer could not reasonably believe in its validity. *United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)) (internal quotations and alterations omitted).

Agent Priestly relied on the authority granted in four different search warrants when she assisted Deputy Cochran and others with the seizure of Walker's horses pursuant to those warrants. Walker failed to plead factual allegations establishing that Agent Priestly unreasonably relied on the warrants or otherwise violated Walker's clearly established constitutional rights. Walker argues to this Court, however, that it should reverse the District Court on grounds that Deputy Cochran's affidavits (1) did not establish probable cause and (2) materially misled the issuing judges. We will address each of Walker's two arguments in turn.

---

[6]This Court has held that this rule applies equally when the affiant "knowingly or recklessly omit[s] from an arrest affidavit information which, if included, would have vitiated probable cause." *Stewart v. Donges*, 915 F.2d 572, 582–83 (10th Cir. 1990).

4815-9216-7409.2

a.  Deputy Cochran's supporting affidavits were not "so lacking in indicia of probable cause" that Agent Priestly should have concluded that it was illegal to seize Walker's horses pursuant to the search warrants

Walker's first argument on appeal is that Deputy Cochran's affidavits did not establish probable cause for the seizure of 58 horses. Of course, an officer can rely on a warrant issued by a neutral magistrate even if the supporting affidavit did not establish probable cause, unless one of the *Leon* exceptions applies.[7] The question before this Court, therefore, is whether the affidavit was "so lacking in indicia of probable cause that the executing officer should have known the search was illegal despite the state magistrate's authorization." *Danhauer*, 229 F.3d at 1007 (citing *Leon*, 468 U.S. at 922 n.23). In answering that question, the Court confines its review to the "four corners of the sworn affidavit and any other pertinent information actually shared with the issuing judge under oath prior to the issuance of the warrant, as well as information relating to the warrant application process." *United States v. Knox*, 883 F.3d 1262, 1272 (10th Cir. 2018). The Court "must examine the underlying documents to determine whether they are 'devoid of factual support.'" *Danhauer*, 229 F.3d at 1006-07 (quoting *United States v. McKneely*, 6 F.3d 1447,

---

[7]Agent Priestly does not concede that the affidavits did not establish probable cause: in his underlying criminal prosecution, Walker filed a motion to suppress evidence on grounds that the warrants were based on affidavits that failed to establish probable cause, Aplt. App. Vol 1. at 94–102, which was denied by the presiding judge, *id.* at 109.

1454 (10th Cir. 1993)). An officer can reasonably rely on that warrant unless the supporting affidavit was "bare bones" and "devoid of facts." *See United States v. Corral-Corral*, 899 F.2d 927, 934 (10th Cir. 1990) (citing *Leon*, 468 U.S. at 921).

Agent Priestly reasonably relied on the search warrants here because Deputy Cochran's affidavits are neither "bare bones" nor "devoid of facts." The affidavits supporting the Badger Basin Ranch search warrants include five pages of single-spaced text. Aplt. App. Vol. 1 at 46–50 & 54–58. Deputy Cochran describes observations of Walker's horses spanning from January 29 through February 19, 2019, including not only her own observations, but observations from an identified civilian reporter, Deputy Mercier (another PCSO deputy), Agent Priestly (a state commissioned Bureau of Animal Protection agent), Sadie Maybach (a third-party licensed veterinarian), and Leslie Harrison (Walker's veterinarian). *Id.* Deputy Cochran's subsequent affidavits add several supplemental observations from Deputy Cochran, Agent Priestly, and an unidentified acquaintance of Walker. *Id.* at 61–62 & 65–66.

In the affidavits, Deputy Cochran described how PSCO received several reports from concerned civilians regarding the near-starvation or death of horses that were in Walker's custody or care. *See id.* at 54 (January 28 and 29, 2019 reports), 61 (February 15, 2019 report), & 65 (February 19, 2019 report). Deputy Cochran also described her and Agent Priestly's observations regarding the poor condition of

13

the horses, and how she warned Walker on numerous occasions that he needed to provide food and water necessary to maintain weight through the harsh winter conditions. *Id.* at 46–50. She described contacting a third-party veterinarian to assess the condition of the thin horses. *Id.* at 49. Deputy Cochran attested that the third-party veterinarian determined that they had a Henneke score of 1 or 1 ½ on a scale from 1 to 9, which meant that the horses were emaciated and had no body fat. *Id.* Deputy Cochran also described her interactions with Walker and his statements defending his care of the horses. *Id.* at 46–50. She even described how Walker complied with some (but not all) of the suggestions from others to improve the condition of the horses. *Id.* at 49–50.

Clearly, Deputy Cochran's affidavits were not "bare bones" or "devoid of facts" such that Agent Priestly should have concluded that the searches and seizures were illegal despite the issuance of four search warrants by two different neutral judges. Agent Priestly is therefore entitled to qualified immunity from liability arising from her actions relying on the warrants and respectfully requests that this Court affirm the District Court's Order dismissing the First and Second Claims for Relief against her.

14

> b. Agent Priestly did not rely on search warrants supported by affidavits containing false or otherwise misleading information

Walker's second argument on appeal is that Deputy Cochran intentionally omitted material facts from the probable cause affidavits in a manner that misled the judges who issued the search warrants.

As a preliminary matter, Walker did not present that argument to the District Court below. Aplt. App. Vol. 2 at 163. As a general rule, federal appellate courts "will not consider an issue 'which has not been presented to, considered or decided by the trial court.'" *Cavic v. Pioneer Astro Indus., Inc.*, 825 F.2d 1421, 1425 (10th Cir. 1987) (quoting *Eureka-Carlisle Co. v. Rottman*, 398 F.2d 1015, 1019 (10th Cir. 1968)). This Court has "consistently refused invitations to consider new issues on appeal" and "repeatedly stated that a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory." *Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 721 (10th Cir. 1993).

Moreover, Walker never even alleged in the Amended Complaint that Deputy Cochran intentionally omitted material facts from the affidavits or otherwise misled the issuing judges. *See generally* Aplt. App. Vol. 1 at 13–26. Because Walker did not argue in any briefing in the District Court below—nor allege in the Amended Complaint—that Deputy Cochran intentionally omitted material facts from the affidavits, Agent Priestly respectfully requests that this Court decline to even address Walker's second argument.

15

In any event, Walker's second argument fails on the merits. In his Opening Brief, Walker argues that Deputy Cochran intentionally omitted [material facts] from the affidavit to hide the influence of Agent Priestley [sic]." Opening Brief at 19. Walker alleges (for the first time) that Deputy Cochran's affidavits misled the issuing judges into believing that law enforcement intended to seize only seven horses when, in fact, Agent Priestly intended to seize most of Walker's horses.[8] *Id.* at 3, 16, & 20–21.

But Deputy Cochran did not represent to the issuing judges that the officers intended to seize seven horses. None of the search warrants limited law enforcement's ability to seize horses to those already identified at the time of the affidavit, either. To the contrary, in the affidavits, Deputy Cochran requested that search warrants be issued permitting law enforcement to locate all horses on the specified properties and then seize and impound any horse "based on veterinary recommendation" after a veterinarian assessed each horse for "any and all compromising health conditions to include physical injuries." Aplt. App. Vol. 1 at

---

[8]Walker also argued in the Opening Brief that Deputy Cochran failed to inform the issuing judges that he "was doing everything he could to protect his horses," that was "not unheard of" for an old horse to die under harsh winter conditions, and that a "skinny horse is not the same as an abused horse." Opening Brief at 16. These are, of course, opinions—not material facts. And Deputy Cochran did indicate in the affidavits that Walker told her that "the winter weather had been very bad and hard on his stock" and that "the horse that died was an older horse." Aplt. App. Vol 1 at 47.

50, 58, 62, & 65. The search warrants in turn all authorized seizure and impound of horses "based on veterinary recommendation."[9] *Id.* at 44, 52, 60, & 64.

Deputy Cochran in no way misled the issuing judges into believing that law enforcement would likely seize only seven horses, either. Altogether, the affidavits included law enforcement's personal observations of the poor condition of at least 29 horses. The affidavits in support of the Badger Basin Ranch warrants indicate that another deputy observed nine thin horses at Badger Basin Ranch on January 29, 2019, *id.* at 46 & 54; that Deputy Cochran personally located a dead horse on January 29, 2019, *id.* at 47 & 55; that Deputy Cochran identified two additional thin horses while onsite at Badger Basin Ranch on February 4, 2019, *id.*; that Agent Priestly identified seven additional thin horses while onsite at Badger Basin Ranch on February 15, 2019, *id.* at 48 & 56; and that Deputy Cochran identified two more thin

---

[9] It is unclear whether Walker is arguing overbreadth on appeal. To defeat qualified immunity, Walker would have to demonstrate that any reasonably competent officer would have concluded that the warrant was overbroad, *i.e.*, insufficiently particular. *Rathbun v. Montoya*, 628 F. App'x at 994-9. "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *Id.* (quoting *United States v. Pulliam,* 748 F.3d 967, 972 (10th Cir. 2014)). Walker did not allege in the Amended Complaint that the warrants were overbroad, let alone that any reasonable officer would have concluded that the warrants were overbroad. *See generally* Aplt. App. Vol. 1 at 13–25. In any event, the warrants clearly provided Agent Priestly and the others with a description sufficient to reasonably ascertain and identify the horses that should be seized, i.e., those horses that a licensed veterinarian recommended be removed from Walker's case based on the veterinarian's individual assessment of each horse's health condition. *Id.* at 44, 52, 60, & 64.

17

horses after riding further into Badger Basin Ranch on the tractor with Walker on February 15, 2019, *id.* The affidavit supporting the Durbin ranch search warrant included Deputy Cochran's observations of at least eight additional horses without adequate shelter or feed at Durbin's ranch. *Id.* at 65.

The affidavits also included reports from others, including Walker, as many as 10 deceased horses, *id.* at 49–50 & 57–58, and the affidavit supporting the Hartsel Springs Ranch search warrant states expressly that it was unknown exactly how many horses Walker owned, *id.* at 61.

In conclusion, Walker failed to demonstrate that Agent Priestly violated his clearly established Fourth Amendment rights because he does not plausibly allege that Deputy Cochran intentionally or misleadingly omitted material facts from the probable cause affidavits.

**B.    Walker failed to state a claim for relief against Harmony for unreasonable seizure in violation of 42 U.S.C. § 1983**

In his Opening Brief argument, Walker only addresses the District Court's dismissal of the First and Second Claims for Relief with respect to Deputy Cochran and Agent Priestly. It therefore does not appear that Walker is challenging the District Court's dismissal of the First Claim for Relief with respect to Harmony.[10]

---

[10]Again, Walker conceded dismissal of the Second Claim for Relief with respect to Harmony. Aplt. App. Vol. 2 at 161.

However, out of an abundance of caution, this Answer Brief will also address the dismissal of the First Claim for Relief with respect to Harmony.

1.    Standard of Review

This Court reviews the district court's order granting a Fed. R. Civ. P. 12(b)(6) motion de novo. *Employees' Ret. Sys. of Rhode Island v. Williams Companies, Inc*., 889 F.3d 1153, 1161 (10th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Cory v. Allstate Insurance*, 583 F.3d 1240, 1244 (10th Cir. 2009) (quoting *Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotations and alterations omitted).

It is particularly important in the context of a § 1983 claim that the complaint clearly identify the specific basis for each individual defendant's liability. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

2.    <u>Walker fails to establish that Harmony has liability for civil damages under § 1983</u>

In the Amended Complaint, Walker alleged that "Harmony is liable for the seizure because it conspired through Ms. Priestley [sic] to unreasonably seize the horses." Aplt. App. Vol. 1 at 22, Am. Compl. ¶ 42.

Because § 1983 creates liability for individuals acting "under the color of state law," plaintiffs generally cannot assert claims under that statute against private actors. *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 936 (1982). However, a private actor may have liability under § 1983 when it conspires with any state actor to deprive a person of a constitutional right. *Adickes v. S. H. Kress & Co*., 398 U.S. 144, 152 (1970). To state a claim for § 1983 conspiracy, however, the plaintiff must "allege specific facts showing agreement and concerted action among [the alleged co-conspirators]." *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.* (quoting *Durre v. Dempse*y, 869 F.2d 543, 545 (10th Cir.1989)).

Walker failed to state a claim for relief against Harmony for a § 1983 conspiracy because he has nothing more than wholly conclusory allegations with respect to the conspiracy theory. *See* Aplt. App. Vol 2 at 170. Walker admitted that he had surrendered ownership of the horses, Aplt. App. Vol. 1 at 20, Am. Compl. ¶ 30, so the fact that Harmony would not subsequently return the horses proves nothing. Walker provides no factual averments that support the allegation that

20

Harmony, a nonprofit facility, "profited" from facilitating the adoption of horses to new, responsible owners. *See generally id.* at 13–25. Walker's other factual allegations that Harmony conspired with the other defendants all describe alleged actions of Ms. Priestly. *Id.* at 21, Am. Compl. ¶¶ 35–36. It is evident that even though Walker attaches the label "conspiracy" to his § 1983 claim against Harmony, he is in fact attempting to recover from Harmony on a theory of vicarious liability for Ms. Priestly's actions. But the law does not provide for vicarious liability for purposes of § 1983 claim. *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 767 (10th Cir. 2013).

Harmony therefore respectfully requests that this Court affirm the District Court with respect to the dismissal of the First Claim for Relief against Harmony on ground that Walker failed to plausibly establish any personal liability of Harmony under § 1983.

## <u>CONCLUSION</u>

For the above-mentioned reasons, Defendants-Appellees Dumb Friends League Harmony Equine Center and Bobbi Priestly respectfully request that this Court affirm the District Court's Order and Judgment and for an award of their costs pursuant to Fed. R. App. P. 39.

4815-9216-7409.2

## <u>CERTIFICATION OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because this brief contains 5,049 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 pt. Times New Roman font.


*s/ Lisa M. Saccomano*
Lisa M. Saccomano

22

## <u>CERTIFICATION OF DIGITAL SUBMISSIONS</u>

The undersigned certifies that (1) all required privacy redactions have been made and, with the exception of those redactions, this document is an exact copy of the written document filed with the Clerk; and (2) the digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Cyclance, Protect Version 2.0.1534.15, current as of July 19, 2021, and according to the program, is free of viruses.


*s/ Lisa M. Saccomano*
Lisa M. Saccomano

23

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2021, a true and correct copy of the foregoing was, unless otherwise indicated, filed electronically with the Clerk of Court using CM/ECF system, which will send notification of such filing to the following who provides notice to the following:

Robert M. Liechty
 ROBERT M. LIECHTY PC
1800 Gaylord Street Denver, CO 80205
rliechty@crossliechty.com
Attorney for Appellant

Andrew R. McLetchie
Eden R. Rolland
FOWLER, SCHIMBERG, FLANAGAN & MCLETCHIE, P.C.
350 Indiana St., Suite 850
Golden, CO 80401
a_mcletchie@fsf-law.com
e_rolland@fsf-law.com
Attorneys for Park County Sheriff's Office
and Officer Leigh Cochran

*s/ Lisa M. Saccomano*
Lisa M. Saccomano

24