UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

MARK WALKER,

    Plaintiff-Appellant,

Case No. 21-1119

vs.

PARK COUNTY SHERIFF'S OFFICE,
DEPUTY LEIGH COCHRAN,
DUMB FRIENDS LEAGUE HARMONY EQUINE CENTER, and
BOBBI PRIESTLEY,

    Defendants-Appellees.

## REPLY BRIEF

Appeal from an order of dismissal by Chief Judge Phillip A. Brimmer,
United States District Court Judge for the
District of Colorado

                              Robert M. Liechty
                              ROBERT M LIECHTY PC
                              1800 Gaylord St.
                              Denver, Colorado 80206
                              Tel: (303) 861-5300
                              ATTORNEY FOR APPELLANT

# Table of Contents

Introduction ............................................................................................. 2
Reply to Priestley's Answer Brief ............................................................. 6
Reply to Cochran's Answer Brief ........................................................... 11
Certificates of Compliance with Rule 25.3 and 32(a) .............................. 14

# Table of Cases

***Branzan Alternative Investment Fund, LLLP v. Mellon Trust Co.***,
2015 WL 13730687 (D. Colo. 2015) ....................................................... 13
***Martinez v. City and Cty of Denver***, 2010 WL 1380529 (D. Colo. 2010) ... 12
***Messerschmidt v. Millender***, 565 U.S. 535 (2012) .......................... 6, 7, 10
***Pierce v. Gilchrist***, 359 F.3d 1279 (10th Cir. 2004) ..................................... 13

## *Introduction*

The problem is this – defendants knew they were going to close plaintiff's lawful business. On the morning of the first seizure, they arrived with 11 trailers and 21 people. They were fully prepared to seize 48 of the 58 horses on the first day (which they did). They knew they were going to adopt the horses out to other owners permanently. They did not give plaintiff a chance to have his own veterinarian present to debate whether the horses were actually being abused as opposed to enduring a bad cold spell. Plaintiff's veterinarian inspected the horses two weeks later, during which time there would have been no change in their health since their seizure, and she determined that the horses did not show record of abuse.

This is evidence that the veterinarians who authorized the seizure did so upon their belief that the animals must have been suffering from the cold, not that they were being abused.

Put another way, what if the magistrate was told the following? There is an outfitter who has some 78 horses at three locations in the county. He has been breading his horses for 40 years to withstand cold weather, but this is the coldest weather we have seen. Three of his oldest horses have already died because of the weather and we want to take three quarters[1] of the horses to a better climate south of Denver where we will adopt them out. As a safeguard, we will only take those horses that a veterinarian says have a "compromised health condition."[2] Any magistrate would have said, "Wait a minute. This guy has been in business for 40 years and you now want to take three quarters of his herd away from him permanently? You need to give me a reason."

---

[1] They seized 58 of 78 horses, which equals 74.4%.

[2] The young horse with colic apparently had a "compromised health condition" and was seized for having colic – that is like charging a parent with child abuse when her child comes down with cancer. Indeed, there were no allegations as to what recommendations any veterinarian made concerning any individual horse. **See** Apdx 132, last paragraph.

Whether this amounts to overreach, as Mr. Walker argued below (Apdx 134-35), or whether it amounts to lack of probable cause to seize three quarters of the herd, as he also argued below (*id.*), makes little difference.[3] Mr. Walker essentially alleged that Ms. Priestley and Deputy Cochran abused their power to ruin Mr. Walker's business (because they felt sorry for the horses[4]).

Mr. Walker does not assert that law enforcement cannot close down a business. Indeed, that happens all the time when law enforcement raids an unlawful house of prostitution, gambling hall, or drug ring. But Mr. Walker's situation is unique because he was operating a lawful business and had been doing so for 40 years. His crime was operating his business during a cold snap.

Because what happened to Mr. Walker was so egregious, counsel has not found a similar case. One might think that this would simply strengthen the qualified-immunity defense because the officers would have

---

[3] However, this factual issue is key to understanding Mr. Walker's allegations below. He claims that the officers brought so many trailers and personnel to the first seizure because knew they were going to take a substantial part of his herd. Before they could lawfully do this, they needed to explain to the magistrate why such a drastic measure was necessary. In other words, they needed probable cause for such an extensive seizure.

[4] Argued below at Apdx 118, 3rd paragraph.

had no idea that what they were doing was wrong. But, in this case, because it was so egregious to ruin a lawful business, the constitutional principles are clear. An officer needs to have probable cause to believe a crime has occurred to justify shutting down that business.

     Mr. Walker set forth the 25 salient facts (taken from the complaint and warrant affidavit), a mixture of facts presented to the magistrate and those that should have been presented to the magistrate, on pages 19-21 of his opening brief. Taken together, even assuming there was probable cause to take the seven horses in the skinny pen, there was not probable cause to seize three quarters of the herd. Those facts state that Mr. Walker complied with the requests from Deputy Cochran. She gave him 30 days to improve the herd's condition, but they seized the horses seven days later (six days after Ms. Priestley first came to the location). Ms. Priestley took all the seized horses to her employer and they were adopted out.

     With these general facts in mind, Mr. Walker replies to the two response briefs. He agrees to abandon the claims against Harmony Equine Center and the County.

### *Reply to Priestley's Answer Brief*

Page 10: Ms. Priestley argues that "'the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers [conducting a search or seizure] acted in an objectively reasonable manner.' ***Messerschmidt v. Millender***, 565 U.S. 535, 546 (2012)." The problem with relying upon cases such as ***Messerschmidt*** arises from the point raised above – the instant case is unique because of its reliance on specialized knowledge. ***Messerschmidt*** referred to the "professional competence of a magistrate." ***Id.***, at 548. That made sense in ***Messerschmidt*** because of the traditional facts in that case. A girlfriend of a gang member complained to the police that her boyfriend (the suspect) assaulted her, tried to throw her over a rail, and shot a sawed-off shotgun at her car (blowing out a tire). The issue on appeal was whether the to-be-seized items listed in the warrant (all firearms, all ammunition, and any evidence showing gang ties), were overly broad given the suspected crime.

The Court reasoned that the magistrate had the professional competence to understand the relationship between the seized evidence and proof of the crime. For instance, evidence of the gang relationship in

the residence would be relevant at trial to show that the suspect had control over the premises. *Id.*, at 552.

That type of specialized knowledge of the magistrate is absent in the instant case. The people with the specialized knowledge were Ms. Priestley, Deputy Cochran, the veterinarians, and Mr. Walker. There is no indication that the magistrate would know Mr. Walker's special breed of horse, how it could withstand cold, the difference between being skinny and been abused, how transporting the animals would abuse them more than letting them stay in their home pasture, what standard the veterinarians would use in determining whether a horse had a "compromised health condition," *etc*. Indeed, they seized the young horse with colic who died in Larkspur of colic – there were no facts that it got colic from abuse.

The issue in ***Messerschmidt*** is somewhat similar to the issue herein – given the suspected crime, was there probable cause to support the seizure of all the items listed in the ***Messerschmidt*** warrant? As the Supreme Court outlined, the magistrate in ***Messerschmidt*** (as well as the nine judges on the Court) had the criminal-law experience to determine what would be necessary to prosecute the crime.

That was not the case herein. The horses were seized and adopted

out to other owners. The horses themselves were not even retained as evidence at the trial; rather, only pictures were used as evidence. Hence, the safeguards in a normal criminal proceeding (return of the property) was not available in the instant case. When the magistrate is considering probable cause for the seizures herein, he needs to be told that the seizure will effectively remove possession of the horses from Mr. Walker forever. Again, the crux of this case returns to the second paragraph of this reply brief.

  <u>Pages 10-11</u>: Ms. Priestley sets forth the four exceptions where an officer may not rely on a warrant: (1) the affidavit misled the magistrate, (2) the magistrate abandoned his role, (3) it is unreasonable to believe that the affidavit contains the required probable cause, and (4) the warrant is facially deficient.

  This issue also goes to the concept outlined in the second paragraph above – what would a magistrate need to know before he would allow an officer to ruin a 40-year-old business simply because of the weather? The main point Mr. Walker made below was that there was not the necessary probable cause to take three quarters of his horses. Or, looked at from

the eyes of the magistrate, was the magistrate misled into allowing such an overbroad seizure?

<u>Page 13</u>:  Ms. Priestley argues that because the affidavits contain more than "bare-bones" facts, she could rely upon the magistrate's approval of those affidavits.  Mr. Walker's point is that the officers used the affidavits to seize three quarters of Mr. Walker's herd and ruin his business, where the facts did not come close to justifying such a cost to Mr. Walker.  If the herd was in such bad shape, why didn't Deputy Cochran put the 58 horses into the skinny pen?  Why did she give Mr. Walker 30 days to improve the herd?  Why weren't they immediately seized?

<u>Page 14</u>:  Ms. Priestley argues that Mr. Walker "complied with some (but not all) of the suggestions from others to improve the condition of the horses."  This fact was at issue because Mr. Walker alleged that he complied with all the requests, although sometimes it would take him a few days to comply.  **See** Apdx 15, ¶¶ 11-14 and 16-20.

<u>Page 15</u>:  Ms. Priestley argues that Mr. Walker failed to argue below that the affidavits omitted material facts.  In the instant case, whether there was probable cause to seize three quarters of the herd is simply the inverse of whether the magistrate was given the necessary facts to

authorize seizure of three quarters of the herd.  Again, this goes to the second paragraph of this reply.

One of the problems with this case is trying to wedge it into a traditional criminal context.  In a traditional case, the evidence is preserved – in the instant case, the evidence was adopted out to horse owners.  In a traditional case, the evidence is not changed.  In the instant case, the horses necessarily changed over time as the weather improved.  In a traditional case, the evidence is used to create profits illegally.  In the instant case, Mr. Walker was not running any type of illegal business.

Page 16: Ms. Priestley argues that Deputy Cochran never said she would only seize seven horses.  That is true.  However, neither did she tell the magistrate that they planned to seize three quarters of the horses.

Page 17, fn. 9: Ms. Priestley argues that Mr. Walker did not allege that the warrants were overbroad.  That is true.  Mr. Walker's argument was that the probable cause set forth in the warrant did not support the amount of the horses that were seized, an argument similar to that in *Messerschmidt*.

Page 18:  Mr. Walker agrees to abandon his claim against Harmony.

### *Reply to Cochran's Answer Brief*

<u>Page 5</u>: Deputy Cochran argues that "[t]he crux of this case is whether there was probable cause to believe Walker was guilty of animal cruelty." Mr. Walker agrees. However, Ms. Cochran fails to identify what facts support probable cause to take three quarters of the herd.

<u>Page 10</u>: Deputy Cochran addresses some of the facts. But she does not explain why she gave Mr. Walker 30 days to improve his herd and then seized three quarters of the herd a week later.

<u>Page 11</u>: She refers to the state criminal statute which provides that a person commits cruelty to animals if he "fails to provide it with proper food, drink, or protection from the weather consistent with the species, breed, and type of animal involved." Mr. Walker was providing proper food and drink. He was providing protection from the weather consistent with what he had done over the past 40 years. There is no indication that he did anything to abuse his animals except that some animals were showing effects of the cold and the three oldest horses died.

<u>Page 13</u>: She argues that Mr. Walker statements were "vague, overbroad, and conclusory." He alleged in his complaint that he "had complied with the deputy sheriff's request to provide feed and water" and

that "there is nothing else that Mr. Walker could have done given the extreme weather." An allegation that Mr. Walker complied with the deputy sheriff's requests is not vague, overbroad or conclusory. This leads to the next statement that there was nothing else he could have done – he complied with the deputy sheriff's requests and there was nothing else he could have done except to move his horses out of the high country (*i.e.*, what the officers themselves did).

Page 14: She argues that subjective intent is not part of fourth-amendment analysis. Mr. Walker agrees. However, the magistrate should have known that the horses were being taken to Ms. Priestley's employer, as part of the employer's business model, so that he could have properly evaluated the situation, that is, was there an interest motivating the seizures? This would be similar to an affiant not telling the magistrate that the suspect was his sister.

Pages 17-20. Deputy Cochran argues that the claims are barred by issue preclusion. However, because this was a motion to dismiss, it would be premature to rule on defendant's affirmative defense. "Dismissing a claim under Rule 12 on the basis of an affirmative defense is only proper where that defense is clear from the face of the complaint." ***Martinez v. City***

*and County of Denver*, 2010 WL 1380529, *3 (D. Colo. 2010)(whether the claim was timely filed with the EEOC was not clear from the face of the complaint and, therefore, this affirmative defense was not available on a motion to dismiss). **See also** ***Branzan Alternative Investment Fund, LLLP v. Mellon Trust Co.***, 2015 WL 13730687, *8 (D. Colo. 2015)(an exculpatory clause, upon which defendant based a motion to dismiss, was not clear from the face of the complaint).

    Page 21:  Deputy Cochran argues that the prosecutor's actions break the chain of causation regarding the claim of malicious prosecution against her.  However, if the officials "have been instrumental in the plaintiff's … prosecution, they cannot escape liability by pointing to the decisions of prosecutors…"  ***Pierce v. Gilchrist***, 359 F.3d 1279, 1292 (10th Cir. 2004).  Deputy Cochran cannot avoid liability for a process she commenced and for which there was either no probable cause or substantially no probable cause to seize all the horses, a fact she knew and did not disclose.  Indeed, she wrote in her supporting affidavit that the horses were "not receiving adequate food, water and veterinary care that would ensure their ability to live in a normal fashion in accordance with their species, breed, age and sex.  [Ms. Priestley] stated due to the lack of water food and veterinary care the survival

13

of these horses would be unlikely if left in the owner's care." **See** Apdx 49, last paragraph. This was simply not true because Mr. Walker was following the advice of both veterinarians, of Ms. Priestley, and of Deputy Cochran.

<u>Page 22</u>: Ms. Cochran argues that because Mr. Walker below did not specifically argue that the magistrate was misled, he cannot do so now on appeal. Mr. Walker incorporates his argument regarding page 15 of Ms. Priestley's Answer Brief.

<u>Page 26</u>: Mr. Walker agrees that he has abandoned the claim against the Sheriff's Office.

### *Certificate of Compliance with Rule 25.3*

Counsel hereby certifies that:

1. All required privacy redactions have been made;

2. The hard copies of the pleadings submitted to the clerk's office are exact copies of the ECF filing; and

3. The ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program, *Webroot SecureAnywhere*, updated July, 2021, and, according to the program, is free of viruses.

### **Certificate of Compliance with Rule 32(a)**

This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B)(ii) because this brief contains 2,824 words, inclusive of everything including footnotes.

Respectfully submitted this August 23, 2021.

By: s/ *Robert M. Liechty*
Robert M. Liechty
ROBERT M LIECHTY PC
1800 Gaylord St.
Denver, Colorado 80206
Tel: (303) 861-5300
Fax: (303) 861-2746
Email: rliechty@crossliechty.com
ATTORNEY FOR APPELLANT

## **CERTIFICATE OF SERVICE**

I hereby certify that on this August 23, 2021, a true and correct copy of the above and foregoing **REPLY BRIEF** was, unless otherwise indicated, filed electronically with the Court who provides notice to the following:

Tiffanie D. Stasiak
Lisa M. Saccomano
KUTAK ROCK LLP
1801 California St., #3000
Denver, CO 80202-2652
Attorneys for Colorado Humane Society and Bobbi Priestley

Andrew R. McLetchie
Eden R. Rolland
FOWLER, SCHIMBERG, FLANAGAN & MCLETCHIE, P.C.
350 Indiana St., Suite 850
Golden, CO 80401
Attorneys for Park County Sheriff's Office and Leigh Cochran

*Signed original in Office of Robert M Liechty PC*

s/ *Robert M. Liechty*
Robert M. Liechty

15